Summers, J.
Paragraph 30 of Section 1536-100, Revised Statutes of Ohio, provides as follows: “All municipal corporations shall have the power to regulate and license * * * chattel mortgage and salary loan brokers. * * * In the granting of any license a municipal corporation may exact and receive such sums of money as the council shall deem proper and expedient.
“In the trial of any action brought under the power of licensing herein given, the fact that any party to such action represented himself or herself as engaged in any business or occupation, for the transaction of which a license may be required or as the keeper, proprietor or manager of the thing for which a license may be exacted, or that such party exhibit a sign indicating such business or calling, or such proprietorship or management, shall be conclusive evidence of the liability of such party to pay the license therefor.”
*150 The ordinance is as follows:
“(No. 1671. Passed December 3, 1906.)
“To Regulate and License Chattel Mortgage and Salary Loan Brokers.

“Be it ordained by the Council of the City of Cincinnati, State of Ohio.

“Sec. 1. No person, firm or corporation shall within the city of Cincinnati, engage in the business of a chattel mortgage loan or salary loan broker, or engage in the business of loaning money secured by mortgage, bills of sale or other contracts involving' as security the forfeiture of rights in personal property, or upon assignments, bills of sale or other conveyance of salary or wages, without first having obtained a license from the auditor of said city so to do.
“Sec. 2. The auditor of said city shall issue to any person, firm or corporation a license as provided for in Section 1 for the period of one year, upon payment to the city of Cincinnati of the sum of two hundred and fifty dollars ($250.00) upon condition that the books and accounts of such licensee shall be open at any time to inspection by said auditor; provided, however, that said license shall expire on the 31st of December of the year in which issued, but said auditor may issue a license to any such person, firm or corporation who engages in business after the first of January for a period less than a year, upon payment of a proportionate amount of said sum.
*151 “It shall be the duty of the auditor to examine the books and accounts of such licensees at least once every year.
“Sec. 3. Every such person, firm or corporation so licensed shall give to each pledgor, mortgagor or assignor, a card upon which shall be written in ink, typewritten or printed the name of the person, firm or corporation making said loan, the name of the pledgor, mortgagor or assignor, the article or articles pledged, mortgaged or assigned, unless there be more than fifteen of said articles, in which case a general description thereof shall be sufficient ; the amount of the loan, the amount of interest charged, the amount of expense charged exclusive of interest and the time for which each of said charges are made; the date when the loan is made and the date when payable, and shall also give the pledgor, mortgagor or assignor, a receipt for each payment of principal, interest or any other charge made on said loan and shall also give the pledgor, mortgagor or assignor, and if any payment shall consist of principal and interest, or any other charge, said receipt shall specify the amount of each.
“Sec. 4. No such person, firm or corporation so licensed shall receive as security for any indebtedness any chattel mortgage, bill of sale or assignment, or any other conveyance of any personal property, salary, or wages, signed in blank, but all blank spaces shall be filled in with ink, or typewritten, with the proper words and figures; and if said conveyance shall be for salary or wages, the name of the person, firm or corporation *152 by whom the person making the conveyance is employed shall also appear on said paper.
“Sec. 5. Every such person, firm or corporation shall, on or before ten o’clock a. m. on each and every Wednesday, file with the auditor of the city of Cincinnati a true record of each and every loan made during the calendar week immediately preceding. Said record shall be made upon cards or blanks furnished by said auditor, and shall consist of the name of the person, firm or corporation making the loan, the name of the pledgor, mortgagor, or assignor, a specific description of the article or articles pledged, mortgaged or assigned, the amount loaned, the rate of interest, the amount charged for interest and the time for which said interest charge is made, the amount of expense charges, exclusive of interest, and the time for which said expense charge is made, and the date when said loan is payable. Such record so filed with the auditor of the city shall remain in the office of said auditor as a permanent record, open to the inspection of the mayor or the chief of police of said city.
“Sec. 6. No such person, firm or corporation shall make a loan to a married man upon the security set forth in Section 1 unless the application for said loan and the conveyance of the chattels or salary shall be signed by the wife of said applicant.
“Sec. 7. Any person or persons, either as principal agent, officer or employe of any other person, or any firm or corporation who violates any of the provisions of this ordinance, or any person or persons, firm or corporation who shall carry on the *153 business of a chattel mortgage or salary loan broker, or loan money as set forth in Section 1 without first obtaining a license as provided therein, shall, for the first offense, be fined not less than twenty-five dollars ($25.00) nor more than two hundred dollars ($200.00) and the costs of prosecution, and for the second and any subsequent offense shall be fined not less than, one hundred ($100.00) nor more than five hundred dollars ($500.00), and it shall be the duty of the auditor, upon the second conviction of any such person, firm or corporation holding a license issued under this ordinance to forthwith revoke said license.”
The principal question is, whether the business of a chattel mortgage broker, or salary loan broker, is one that may be subjected to license and regulation by the state in the exercise of police power, and, if so, whether the power to license and regulate the business may be delegated by the state to municipal corporations, and whether Section 5 of the ordinance prescribes reasonable regulations.
The term police power has been much employed in recent years, and many attempts have been made to define it, but it is said to be incapable of definition. The term is not used in the constitution. The police power is included in the legislative power, but there are in the constitution express limitations upon some of the powers comprised in the legislative power, and the term police power is used to designate that power from others and is helpful in ascertaining its scope and the limitations upon it.
*154 All of the legislative power of the state is vested in .the general assembly. Baker v. Cincinnati, 11 Ohio St., 534, 542. State v. Frame, 39 Ohio St., 399, 407. But it is a delegated power and is limited by the scope of the purposes for which it was granted, as well as by the express limitations of the constitution. The Cincinnati, W. & Z. Railroad Co. v. The Commissioners of Clinton County, 1 Ohio St., 77, 84, 86. The purpose for which it was granted is indicated by the opening declaration, “We, the people of the State of Ohio, grateful to Almighty God, for our freedom, to secure its blessings and promote our common welfare, do establish this 'Constitution.” And Section 20 provides, “This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people.”
Chief Justice Shaw said, in Commonzvealth v. Alger, 7 Cush., 53, “Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient.”
In Chicago, B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S., 561-592, Mr. Justice Harlan says: “We hold that the police power of the state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, *155 the public morals or the public safety.” And in Frisbie v. United States, 157 U. S., 160, Mir. Justice Brewer says: “While it may be conceded that, generally speaking, among the inalienable rights of a citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the admitted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence, to the common carrier the power to make any contract, relieving himself from negligence; and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services or property.” In Phillips v. State of Ohio, 77 Ohio St., 214-216, where the constitutionality of .statutes regulating junk dealers and dealers in secondhand articles is considered, Davis, J., says: “It is almost an axiom that anything which is reasonable and necessary to secure the peace, safety, morals and best interests of the commonwealth may' be done under the police power; and this implies that private rights exist subject to the public welfare.” And again, “the general power of the legislature to determine what is necessary for the protection of the public interests béing clear, judicial inquiry is necessarily limited to *156 determining whether a particular regulation is reasonable, impartial and within the limitations of the constitution. The legislature is the judge of the mischief and the remedy, and of what shall be state policy, subject to the restrictions just mentioned.”
The right to labor, to contract, to do business or to engage in any of the common occupations of life is one of the inalienable rights of the citizen, (Butchers Union Slaughter-House and Live-Stock Landing Company v. Crescent City L.-S. L. & S.-H. Company, 111 U. S., 746, Mr. Justice Bradley, 762, M1* Justice Field, 756) and may be regulated, therefore, by the state only to promote the public welfare, and this brings us to the question, what possible public good can be subserved by regulating brokers in chattel mortgages and in salary loans, and if the business is subject to regulation under the police power, are the provisions of the ordinance unreasonable?
Usury laws are of ancient origin, and while the utility of such legislation is still open to question, such laws are in force in this state, and in a majority of the states, and we think it too late to question the power of the state to enact them. One of the ways in. which such laws are circumvented "is by a commission to a broker. The class that obtain such loans comprises the most needy and improvident, and consequently the most susceptible to fraud and extortion, and surelv legislation to prevent such evasions, or fraud and extortion, may rest upon the same grounds as usury laws. And it would not be profitable to consume space by setting forth *157 the almost numberless instances of laws imposing restraints upon the right to contract or regulations of occupations, or of the conduct of business that have been upheld by the courts.
The legislature may delegate to municipal corporations the right to exercise the police power to effect the purposes of its organization, but the extent of the grant and the reasonableness of its exercise are questions for the courts.
In Stoutenburgh v. Hennick, 129 U. S., 141, 147, Chief Justice Fuller says: “It is a cardinal principle of our system of government,' that local affairs shall be managed by local authorities, and general affairs by the central authority; and hence while the rule is also' fundamental that the power to make laws cannot be delegated, the creation of municipalities exercising local self government has never been held to trench upon that rule. Such legislation is not regarded as a transfer of general legislative power, but rather as the grant of the authority to prescribe local regulations, according to immemorial practice, subject of course to the interposition of the superior in cases of necessity.” In the present case the grant is in general terms, so that the question arises as to the reasonableness of the regulations prescribed by Section 5 of the ordinance. The authority given is to regulate and license chattel mortgage and salary loan brokers. The ordinance is so entitled, but its provisions are more comprehensive and embrace persons engaged in the business of loaning money upon chattel mortgages, or other personal property as security, and most of the regulations prescribed relate to such trans *158 actions rather -than to those of brokers. But we do not think it necessary, in the present case, to consider the validity or the invalidity of the ordinance in these respects for' the plaintiff in error obtained a license and objects only to the requirements of the fifth section. His objections to these requirements are that compliance would destroy his business, because borrowers of this class are so sensitive in respect to publicity that they will forego a loan rather' than expose their necessities to , the public; and that it invades the right of privacy. The requirements of the fifth section are not much more exacting, and will not give as much publicity as do most registration acts, and compliance with them will not destroy the business if it is legitimate. Publicity is recognized as one of the most effective preventatives of many harmful practices. If some such ordinance had been in force in Venice, Shy lock never would have stipulated for the pound of flesh. We do not think the requirements are unreasonable.
The only provision of the constitution that occurs to us upon which is based the contention that the ordinance invades the right of property, is Section 14 of the Bill of Rights, which provides: “The right of the people to be secure in their persons, houses, papers and possessions, against unreasonable searches and seizures shall not be violated; .and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.” The search or seizure there referred to, is' a search or seizure under authority of law. The ordinance *159 in question makes no provision for a warrant nor does it prescribe anything within the spirit of that declaration and inhibition historically considered. In Marmet v. State, 45 Ohio State, 63-69, where the constitutionality of a license law was under consideration, Spear, J., said of a similar objection, that if it made the law void then a like infirmity attached to many other laws then in force.
Objection was made to a similar requirement respecting pawnbrokers, in St. Joseph v. Levin, 128 Mo., 588, and it was held that the ordinance did not violate a similar requirement of the constitution of that state, or the fifth amendment to the Constitution of the United States. And in Launder v. Chicago, 111 Ill., 291, a similar requirement respecting pawnbrokers was held not unreasonable.
Having found the power to exist in the state, its delegation to the municipality, and the objectionable regulation, prescribed by the ordinance, not unreasonable, the judgment is

Affirmed.

Crew, C. J., Spear, Davis, and Price, JJ., concur.