THE CITY OF ST. JOSEPH v. LEVIN, *Appellant.*

### Division Two, May 21, 1895.

1. **City Ordinance**: REGULATION OF PAWNBROKERS: CONSTITUTION. A city ordinance requiring pawnbrokers to keep a book in which shall be entered a description of all property left with them in pawn, together with the name and description of the person leaving it, and to submit such book to the mayor or to any police officer on demand, is a mere police regulation to aid in the detection and prevention of larceny, which a city is authorized to pass under a charter conferring on it the power to license, regulate, tax or suppress pawnbrokers.

2. ———: ———: ———. Such ordinance is not in conflict with the constitution, article 2, section 11, providing that the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures.

3. ———: SUFFICIENCY OF COMPLAINT. The complaint of the violation of the ordinance in not permitting the inspection by a police officer of the book required by the ordinance to be kept by defendant as pawnbroker, *held* good, although it only inferentially charged that defendant kept said book.

*Appeal from Buchanan Criminal Court.*—HON. SILAS WOODSON, Judge.

AFFIRMED.

*Vories & Vories* and *Ben. J. Woodson* for appellant.

(1) The ordinance is unconstitutional in providing for unreasonable searches and seizures and in compelling a citizen to produce books and papers to be used in evidence against himself, and unreasonably interfering with the legitimate business of a private citizen. Constitution, article 2, section 11; *Boyd v. United States,* 116 U. S. 616; *Clinton v. Phillip,* 58 Ill. 102; Cooley on Constitutional Limitations, p. 365; *People v. Hess,* 48 N. W. Rep. 181; Amendments to Constitution of

United States, secs. 4 and 5; *State ex rel. v. Simmons*, 109 Mo. 118; *Counselman v. Hitchcock*, 142 U. S. 547; *Commonwealth v. Wetzel*, 84 Ky. 537. (2) The ordinance (section 77) is unreasonable, because its terms would include not only what is technically known as pawnbrokers, but would subject the private books, papers, etc., of all bankers, money loaning institutions, etc., which loaned money upon collateral security, to unreasonable search and seizure without a warrant. This can not be done simply by classing such necessary institutions with pawnbrokers. (3) The complaint charges that A. J. Levin was "licensed as a pawnbroker," but nowhere charges him to have been a licensed pawnbroker. *State v. Hathaway*, 106 Mo. 236; *City v. Standars*, 24 Mo. App. 192; Dillon on Municipal Corporations [3 Ed.], sec. 415; 1 Beach on Public Corporations, secs. 532, 533. Nor does. it charge that defendant kept the required book.

*Huston & Parrish* for respondent.

(1) As a city of the second class, St. Joseph has plenary power to enact all ordinances reasonably necessary for the regulation of pawnbrokers. Subdivision 17, sec. 1255, R. S. 1889. The city may not only regulate, but may suppress pawnbrokers. Same section. The business is classed with those occupations which occupy the debatable ground between those which are useful and those which are immoral. (2) The exercise of this necessary police power in no wise constitutes an unreasonable search. *Launder v. Chicago*, 111 Ill. 291. See, also, *Shuman v. Fort Wayne*, 26 N. E. Rep. 560. (3) The complaint is sufficient. *First.* It states even unnecessarily that St. Joseph is a city of the second class. *Second.* That Levin violated an ordinance of said city, giving section, number of ordi-

nance, and date of offense.  *Third.*  The facts consti-
tuting the violation of the ordinance.  *St. Louis v.
Knox,* 74 Mo. 79;  *St. Louis v. Ins. Co.,* 53 Mo. 466.

BURGESS, J.—The defendant was charged, in the
police court of the city of St. Joseph, with violating
sections 76 and 77 of general ordinance number 361, of
said city, by failing and refusing to submit for the
inspection of one T. J. Allie, a duly commissioned
police officer of said city, the book required to be kept
by him as a pawnbroker, for the purpose of registering
and entering a minute description of any and all per-
sonal property, bonds, notes, or other securities received
by him on deposit or purchase as such pawnbroker, as
provided by section 76 of said general ordinance, he,
the said Levin, being licensed as a pawnbroker in said
city.

The trial resulted in his conviction by the police
court and the imposition of a fine of $50.  He then
appealed to the criminal court of Buchanan county,
and he was again tried and convicted and the same fine
imposed.  The case is now in this court on his appeal.

The sections of the ordinance referred to in the
complaint and which were read in evidence at the trial
over the objections of defendant are as follows:

"Section 76.  *Pawnbrokers to keep books, etc.*—
Every person so licensed as aforesaid shall keep at his
place of business a substantial and well bound book in
which he shall enter in writing a minute description of
all personal property, bonds, notes or other securities
received on deposit or purchase as aforesaid, the time
when they were so received, and particularly mention-
ing any prominent or description marks that may be on
such property, bonds, notes, or other securities together
with the name, residence of the person or persons by
whom they were left, the amount of purchase money,

the amount loaned, the interest charged and the time when the loan falls due; which said book shall be kept clean and legible and no entry therein shall be defaced, erased, or obliterated, and all the entries therein shall be made with ink. He shall give to the person leaving the property in the pawn, a plainly written or printed ticket or receipt, showing the transaction. Every such licensed person failing to comply with any of the provisions of this section shall forfeit to said city the sum of $20.

"Sec. 77. Every person so licensed as a pawnbroker shall, during the ordinary hours of business, when requested by the mayor or any police officer of the city, submit and exhibit such book in the next preceding section provided for, to the inspection of the said mayor or any police officer, and shall also exhibit any goods, personal property, bonds, notes or other securities that may be so left with the licensed person, to the inspection of the mayor or police officer. Any and every such person who shall refuse to submit such book, goods, personal property, bonds, notes or other securities as aforesaid, shall be deemed guilty of a misdemeanor and, on conviction, shall be fined not less than $50."

The evidence showed that defendant was a pawnbroker; that he refused to submit his book kept in connection with his business as such to one of the regular police officers of said city for examination on demand, and that he was guilty as charged in the complaint. The only questions, therefore, worthy of consideration are with respect to the sufficiency of the complaint, and the validity of the ordinance.

Defendant contends that the complaint is bad, in that it fails to state that he kept a book such as the officer requested to see, or that the officer was on duty, or an acting officer, at the time, or that defendant was

a pawnbroker. While it is conceded that a complaint for the violation of a city ordinance need not state the facts upon which it is founded with the same strictness required in an indictment, it is claimed that it should state all necessary facts to show defendant's liability.

While the complaint does not directly allege that defendant kept the book required by the ordinance to be kept by him as a pawnbroker, the only inference to be drawn therefrom is that he did. In other words, such is the logical effect of the allegation, and when the complaint is accorded the same liberal construction to which similar papers in courts of inferior jurisdiction, such as justices of the peace and police courts are accorded, we are inclined to hold it to be sufficient. There is no merit in the other objections to the complaint, which are exceedingly technical.

A further contention is that the ordinance is unconstitutional and in conflict with the fifth amendment to the constitution of the United States, which provides that no person "shall be compelled, in any criminal case, to be a witness against himself," and with section 11, article 2, of the constitution of the state of Missouri, which provides: "That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by oath or affirmation reduced to writing."

That amendment has no application to this case, but was intended to act on the national government only, and was not intended to limit the powers of the states, in respect of their own people. It was so held by the supreme court of the United States in *Spies v. Illinois*, 123 U. S. 131; 116 U. S. 252.

It has been repeatedly held that a person when testifying as a witness could not be required to answer questions incriminating himself, that is, connecting himself with the commission of any crime for which he might be criminally prosecuted. *Boyd v. United States*, 116 U. S. 616; *Counselman v. Hitchcock*, 142 U. S. 547.

So it was held in *State ex rel. v. Simmons Hardware Co.*, 109 Mo. 118, which was a *quo warranto* proceeding at the relation of the attorney general, against the defendant, charging it with an unlawful exercise of its corporate franchises, that an act of the legislature, "for the punishment of pools, trusts and conspiracies; requiring some officer of every corporation to inform, under oath, the secretary of state (under penalty of fine, imprisonment, etc.) whether such company has violated said act," was in conflict with the constitution.

There is, however, a clear distinction between the cases cited, and the one in hand. The ordinance is a mere police regulation which the city, by virtue of its charter powers, had the right to pass, to aid in the prevention and detection of larcenies of personal property which is frequently sold or pledged to pawnbrokers by thieves, and not for the purpose of preserving evidence to be used against any other person. The defendant was not charged with any crime, nor was there any pretense that he was guilty of crime, and because of the fact that the book might tend to show that he was in the possession of property which had been stolen; that he might possibly be prosecuted at some future time for receiving it, knowing that it had been stolen, and the information acquired by the police officer from an inspection thereof used against him, was no reason why he should not have complied with the ordinance, and submitted the book to the inspection of the police officer. In a criminal proceed-

ing against the defendant, he could not of course be required to produce the book to be used as evidence against him, or to permit an examination of it for that purpose, because to do so would be an invasion of his constitutional right. In this case, however, no right guaranteed to him by the constitution is violated by the ordinance.

The next question for consideration is as to whether the ordinance is in conflict with, or violative of, the section of the constitution of the state of Missouri, quoted. By its charter the city is given power to "license, regulate, tax or suppress ordinaries, hawkers, peddlers, pawnbrokers." The city may not only regulate, but suppress pawnbrokers, or refuse to license such occupation, altogether. No person has the right to follow such occupation within the limits of said city without first obtaining a license from its authorities for that purpose, which may be granted or withheld at pleasure. The business is a privilege, not a right, and he who avails himself of it and derives its benefits must bear its burdens, and conform to the laws in force regulating the occupation, if not illegal.

In *Launder v. Chicago*, 111 Ill. 291, in passing upon a similar ordinance, it was said: "We do not regard the ordinance as being 'unjust, unreasonable, tyrannical and oppressive.' The requirements objected to are but reasonable means to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods in their shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime. The ordinance is not tyrannical and oppressive, as the appellant was not bound to bring himself within its provisions. Before taking out license, appellant knew he had to keep a book containing an account and description of goods pawned, amount of money loaned thereon, the time of pledge,

rate of interest, and the names of pledgors, and that such book must be kept open for the inspection of the mayor and any member of the police, and no objection seems to have been urged to these requirements, and it appears that appellant has always complied with them."

In conclusion it is only necessary to say that we do not regard the ordinance as unconstitutional, unreasonable or unjust; but that its adoption was a wise, prudential measure as tending to prevent and aid in the detection of crime. The judgment is affirmed. All of this division concur.