IN THE MATTER OF ALICE J. ARMISTEAD.

IN THE MATTER OF AGNES F. BAER, Nos. 42329, 42331—245 S. W. (2d) 145.

Division One, January 14, 1952.

Opinion Modified, February 6, 1952.

*William H. Charles* for appellants; *Lowenhaupt, Waite, Chasnoff & Stolar* of counsel.

*J. E. Taylor*, Attorney General, and *Robert R. Welborn*, Assistant Attorney General, for respondent.

962

 LOZIER, C.—Two appeals by taxpayers from judgments affirming findings and decisions of the state tax commission have been consolidated. As construction of constitutional provisions and of the revenue laws of this state are involved, the appeals are properly here. Sec. 3, Art. V, 1945 Cons.

The initial issues are: Whether the beneficiary of a life insurance policy has a "beneficial interest" in the proceeds of the policy "retained by" or "left on deposit with" the insurer after the death of the insured; and whether such proceeds are "moneys on deposit" as that term is used in the Intangible Personal Property Tax Act. Appellants also contend that that law is void for uncertainty and, as applied here, is unconstitutional.

Appellant Alice J. Armistead is the widow of Thomas B. Armistead who died in 1937. Appellant Agnes F. Baer is the widow of Harold M. Baer who died in 1943. Each appellant was the beneficiary in life insurance policies in which her husband was the insured. In Mrs. Armistead's case, she "took out" three of the policies and her husband "took out" the other three. In Mrs. Baer's case, Mr. Baer "took out" all four policies. After the deaths of the insureds, the insurer companies "retained" or "held," or the beneficiaries "left with" or "deposited with" the companies, the proceeds of the policies. We shall refer to these as the "retentions." By virtue of the retentions, the companies have made, and will make to appellants for life, monthly or semi-annual payments. During calendar 1946, Mrs. Armistead received $4275.84, and Mrs. Baer, $3152.48. The instant appeals involve these retentions and the installment payments made thereunder during calendar 1946.

The retentions were under policy provisions for optional methods of settlement or payment of the policy proceeds, and under 

options exercised either by the insured prior to, or by the beneficiary after, the death of the insured. After the insured's death, the companies issued what we shall call "retention agreements." In the retention agreements, the companies acknowledged receipt of the proceeds and agreed to pay the life beneficiary a fixed rate of interest thereon, plus such annual dividends or additional interest as might be determined by the company. Payments were to be made monthly or semi-annually to appellants, respectively, for life and thereafter to their respective children or their descendants. With one exception in Mrs. Armistead's case, neither appellant has a right to withdraw the principal sum or any part thereof. In one instance in Mrs. Armistead's case, and in all four instances in Mrs. Baer's case, the life beneficiary cannot assign, transfer or encumber the payments and the payments are not subject to creditor's claims, except to the extent permitted by law.

In all instances in Mrs. Baer's case, and in five of the six instances in Mrs. Armistead's case, the balances of the funds are payable to the estate of the life beneficiary in the event she survives her children and their descendants. There was no such provision in the instance where Mrs. Armistead reserved the right of withdrawal of all or part of the funds.

In the last mentioned instance, a policy provision entitled Mrs. Armistead, as "the beneficiary entitled to receive such proceeds," to exercise the option "when the same became payable." She selected the option, "Proceeds Left at Interest," which read in part: "The proceeds of this policy, or any part thereof, may be left with the company and the company will pay interest thereon." She elected to have the installments paid to her for life and thereafter to her children, and retained the right, for herself and her children, to withdraw at any time all or any part of the "funds then retained by" the company.

The captions and wording of the retention agreements varied. One, captioned "Supplementary Contract Issued in Settlement of Amount Due Payee Under or on Account of Policy No. 995880," recited that the "sum due under said policy is applied as a principal sum at interest under Option Two (Left On Deposit At Interest)." Option Two read that the proceeds "shall be left on deposit." Two of the retention agreements, captioned "Special Settlement Agreement," and "Interest Income Certificate," respectively, recited that the proceeds "shall be retained." In three, each captioned "Supplementary Contract Deposit Bearing Interest," the principal sum was "(herein called the deposit) being the proceeds of the policy," and the company agreed "to hold the deposit." In one, uncaptioned, the company "acknowledges itself bound" for the amount of the proceeds and agreed that "said amount shall be held." In another, captioned

"Certificate of Deposit No. 91646," the company "acknowledges receipt" of the proceeds of three policies.

The law involved is the Intangible Personal Property Tax Act, 1945 Laws, p. 1914, Secs. 11456.1 ff., Mo. RSA, now substantially Chapter 146 (Secs. 146.010-146.130), Mo. RS 1949. We shall refer to this law as "the Act." (Our references to Missouri statutes will be to Mo. RS 1949 unless otherwise indicated.) The tax is a property tax levied upon specified intangible personal property and is based upon the property's yield during the preceding calendar year at the rate of 4% of such yield. Sec. 146.020. Taxable "intangible personal property" includes "money on deposit." Sec. 146.010. One having a "beneficial interest" is liable for the tax. Sec. 146.030.

Neither appellant made the tax return provided for by Sec. 146.050. Acting under the provisions of Sec. 146.080, the director of revenue assessed appellants for 1947 taxes amounting to 4% of the installment payments each had received during 1946; and found and decided that appellants, receiving interest from proceeds left on deposit with the companies, had such beneficial interests as would subject them to liability for the tax. Upon appellants' appeals to the state tax commission, respondent herein, the director's findings and decisions were affirmed. Secs. 146.080 and 138.430. Upon review, the circuit court affirmed respondent's findings and decisions.

 Appellants assert that: "the beneficiary's right to interest does not stem from new and independent agreements of deposit, but stems from the policies themselves," citing Bronson v. Glander, 149 Ohio St. 57, 77 NE 2d 471. While the facts there are similar to those in the instance in which Mrs. Armistead exercised the option, that case is not in point. As will appear, the Ohio law expressly taxes both "annuities" and "deposits" in which a person has a "beneficial interest," and, just as expressly, excludes "contracts of insurance and dividends paid or applied thereunder." The holding was that installment payments similar to those here involved were not "annuities." But we do not think that it is material whether the election, whereby the beneficiary is to receive the income for life, was made by the insured or by the beneficiary. The natures of the retentions and of the retention agreements are the same, no matter which exercised the option. So, the questions are: Did appellants have "beneficial interests" in the retentions and are the retentions "moneys on deposit" as that term is used in Sec. 146.010?

There is no merit in appellants' contention that they have no "beneficial interest" in the retained funds. We can disregard the fact that, in every instance except one, the balance of the proceeds are payable to the beneficiary if she survives her children and their descendants. The right to receive the income, the installment payments, during life is a property right in the principal itself. Appellants acquired a vested interest in the insurers' performance of the terms

of the policies, including any rights to exercise options. See Latterman v. Guardian Life Ins. Co. of America, 280 N. Y. 102, 19 NE 2d· 978, wherein it was said that the beneficiary's right to exercise the option (to have the company retain the proceeds and pay interest thereon) was "an interest in the nature of a property ·right." See also Commonwealth ex rel. Martin, Commissioner of Revenue v. Sutcliffe, 283 Ky. 274, 140 SW 2d 1028; Harker v. Evatt, 140 Ohio St. 346, 44 NE 2d 355.

In Rowe v. Braden, 126 Ohio St. 533, 186 NE 392, 395, it was said that the "equitable interest" of a resident beneficiary under a trust "* * * is the property right belonging to the resident beneficiary, measured by the income, which is taxed in Ohio * * *." In other states, the tax has been held applicable to the equitable interest of a resident beneficiary of a trust. Commonwealth v. Stewart, 338 Pa. 9, 12 A. 2d 444, aff. 312 U. S. 649, 61 S. Ct. 445; 85 L. Ed. 1101 ("equitable interest"); Commonwealth v. Sutcliffe, supra ("beneficial owner," "equitable title").

Appellants cite Owens v. Fosdick, 153 Fla.· 17, 13 So. 2d 700. The court there felt that, under the terms of that particular trust, the beneficiary had a vested beneficial interest in the income only rather than in the trust estate itself; and that a tax on such interest was in the nature ·of a tax on income. That case is inapplicable as it is bottomed upon Florida's constitutional prohibition against state income taxes. Art. IX, Sec. 11, Fla. Cons.

■ The Act does not define "moneys on deposit." Appellants say "it is doubtful" that the instant retentions are "moneys"; that "moneys" means cash or the equivalent of cash. They cite Mann v. Mann, 14 Johns. (N. Y.) 1, 7 Am. Dec. 416, an opinion by Chancellor Kent. Respondents cite Jenkins v. Fowler, 63 N. H. 244. The two cases announce and apply the rule that, as used in *wills*, "moneys" is ordinarily "confined to money strictly, so called," unless the will, read in its entirety, shows an intention that it be not so limited. Anno. 93 ALR 514, 515 (supplemented in Anno. 173 ALR 656). Neither case aids us in our search for the legislative intent in the use of "moneys on deposit" in a ·tax *statute* enacted over one hundred years after the decision in Mann v. Mann, supra, in and for an economic, business and financial society vastly different from and more complicated than that of the days of Chancellor Kent.

We cannot agree with appellants that "moneys" means "cash or its equivalent, ■ such as bank notes and the like." Rather, we believe the legislature used "moneys" in Sec. 146.010 in the broad sense of "funds" of another held by one under an agreement.

Prior to the adoption of the 1945 Constitution and the enactment of the law here involved, personal property included "money, goods, chattels, things in action and evidences of debt." Sec. 655, both Mo. RS 1939, and Mo. RSA. Both "money on hand" and "money de-

posited in any bank, or other safe place," as well as secured and unsecured "solvent" notes and bonds and "all other property * * * and every species of property" not otherwise exempt, were taxable. Sec. 10950, both Mo. RS 1939, and Mo. RSA. No statutory distinction was made between "tangibles" and "intangibles" and the tax was levied upon both at the same rate. Bank "deposits" were "credits." See State ex rel. American Automobile Ins. Co. v. Gehner, 320 Mo. 702, 8 SW 2d 1057, 59 ALR 1026; State ex rel. Missouri State Life Ins. Co. v. Gehner, 320 Mo. 691, 8 SW 2d 1068; Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143; Smith v. Ajax Pipe Line Co., 87 F. 2d 567.

Personal property still includes "money, goods, chattels, things in action and evidences of debt." Sec. 1.020. But it is now classified as either tangible or intangible. Art. X, Sec. 4(a), 1945 Cons.; Sec. 137.015. Sec. 137.010 defines intangible personal property as "all property other than real property and tangible personal property, as defined by this section"; and "'tangible personal property' includes every tangible thing being the subject of ownership or part ownership whether animate or inanimate, *other than money*, and not forming part or parcel of real property as herein defined." (Our italics.) "Money" is not mentioned in the tangible personal property list to be filed with the local assessor. Sec. 137.120. And "moneys" are taxable as in tangible personal property only when "on deposit" (Sec. 146.010) and even then only where they had a yield the preceding year (Sec. 146.020).

So, both the existing laws and the statutes they superseded clearly show a legislative intent not to levy the personal property tax upon "money" as "cash" (specie, coin or currency, bank notes) or its equivalent (checks or drafts) as *tangible* personal property. And these present laws and repealed statutes just as clearly show that the General Assembly used "moneys" in the sense of "funds," meaning both "cash or its equivalent" *and* "claims" or "credits" for cash or its equivalent. We are convinced that the legislature intended that *funds* on deposit at interest were to be taxed along with the other intangible "things in action" or "evidences of debt" listed in Sec. 146.010. We so hold.

But were these funds "on deposit?" We agree with appellants that "mere labels do not determine legal relationships." We have summarized and quoted from both the policy provisions and the retention agreements relating to installment payments of the proceeds of the policies. Irrespective of the captions of the retention agreements, and irrespective of whether the company "held" or "retained" the funds or the life beneficiary "deposited" or "left" such funds with the company, the essential facts are: the proceeds of the policy became due and payable upon the death of the insured (but, except in one instance, only in installments, not in toto) and the company,

by agreement, kept the proceeds, pays interest thereon and makes installment payments to the life beneficiary. In essence, the retained funds are "on deposit" with the companies, no matter who "deposited" such funds.

Appellants argue that the funds were not "on deposit" because they were not (except in one instance) withdrawable on demand. They first cite: 26 CJS, Deposit, *"On deposit,"* p. 723; Curtis v. Leavitt, 15 N. Y. 9, 265; Long v. Straus, 107 Ind. 94, 6 N. E. 123; (See Lang v. Straus, 7 N. E. 763), 57 Am. St. Rep. 87. These authorities do not sustain appellants' position as their effect is: a "deposit" of funds is payable on demand *absent* an express or implied agreement to the contrary. State v. Jackson, 221 Mo. 478, 120 SW 66, involved forgery of a bank deposit slip on a regular bank account, concededly a deposit withdrawable on demand. And in Brooke v. White, 219 Iowa 624, 258 N. W. 766, involving a bank savings account deposit, the holding was that the funds were withdrawable on demand only because the bank had not issued regulations requiring notice of intention to withdraw.

In Hedges v. Shipp, 166 Tenn. 451, 62 SW 2d 49, cited by appellants, it was held that negotiable interest-bearing notes, payable on demand, owned by a Tennessee resident and held by New York banks, were not "money on deposit" within the meaning of the Tennessee ad valorem personal property tax law. The Tennessee court construed "deposit" in the narrow sense of a "naked bailment" of funds with no obligation for payment of interest and returnable on demand. We cannot so strictly construe "on deposit" as used in Sec. 146.010. Tennessee classifies "money on deposit" as tangible personal property. Sec. 1355, Michie's 1938 Tenn. Code. Ann. In Missouri, funds on deposit are intangibles.

Study of the statutes of other states reveals a wide variation in language used in subjecting to, or exempting from, taxation both "money" and "deposits." Often, bank deposits payable on demand are specifically either taxed or exempted. See, for example, Secs. 272.03 and 273.22, 1949 Minn. Stat.; Sec. 79-301, 1949 Kans. Gen. Stat. Ann.; Sec. 718[3], 1949 W. Va. Code Ann.; Sec. 84-101, 1947 Ark. Stat. Ann.; Sec. 57.0301, 1939 S. D. Code. In some states, the deposit need not be withdrawable on demand. See Sec. 9697(x), 1942 Miss. Code Ann.; Sec. 105-199, 1950 N. C. Gen. Stat.; Sec. 64-801, Burns 1951 Ind. Stat. Ann.; Sec. 716[1], 1949 W. Va. Code Ann.; Sec. 84-425, 1947 Ark. Stat. Ann.; Sec. 58-408, 1950 Va. Code. In one state, bank deposits not withdrawable on demand are expressly excluded. Sec. 64-901, Burns 1951 Ind. Stat. Ann. In some states, "moneys on deposit" is not limited to deposits with banking institutions but covers any deposit within or without the state. Sec. 1501, 1947 Okla. Stat. Ann.; See 716[1], 1949 W. Va. Code Ann.;

Sec. 84-101 and 84-425, 1947 Ark. Stat. Ann.; Sec. 57.0301, 1939 S. D. Code; Sec. 199.02, 1949 Fla. Stat.

The Michigan, Ohio and Oregon intangible personal property tax laws, like Missouri's, base the tax upon yield, earnings or income. In Michigan, "intangible personal property" includes "moneys on deposit." Sec. 205.131, 1948 Mich. Comp. Laws. In Ohio, "deposits" includes "every deposit" withdrawable in "money, whether on demand or not." Sec. 5324, Throckmorton's 1940 Ohio Code Ann. In Oregon, "money and credits" includes "money at interest." Sec. 69-1401, 1930 Ore. Code Ann.

In some states, the proceeds of life insurance policies have received express legislative recognition as deposits. See Sec. 64-901, Burns 1951 Ind. Stat. Ann. Sec. 105-205, 1950 N. C. Gen. Stat., provides: "All funds on deposit with insurance companies on December thirty-first of each year, belonging to or held in trust for a resident of this State or having acquired a taxable situs in this State" is subject to the tax. "The term 'funds on deposit' as used in this section shall mean all funds accrued or accruing by virtue of the death of the insured or the original maturity of a policy contract where the party or parties entitled to receive such funds might withdraw same at their option upon stipulated notice."

In Michigan, "annuities," which are subject to the tax, includes insurance contracts containing options for installment payments for a fixed period or for life, once the option has been exercised. Sec. 205.131, 1948 Mich. Comp. Laws. In Ohio, taxable "investments" does not include "contracts of insurance and dividends paid or applied thereunder," with certain exceptions not material here. Sec. 5323, Throckmorton's 1940 Ohio Code Ann. In Bronson v. Glander, 149 'Ohio St. 57, 77 NE 2d 471, installment payments similar to those here involved were held to be proceeds of "contracts of insurance," expressly exempted from the Ohio tax. In Virginia, the tax is applicable to "such part of the proceeds of any life insurance policy as is retained by the life insurance company on interest at the request of the owner of such policy or at the request of the beneficiary of such policy after the death of the insured. Sec. 58-408, 1950 Va. Code.

A comparison of the short, general classifications of intangibles set out in Sec. 146.010 with the long, detailed listing of intangibles in the statutes of other states, is of interest. In brevity and general classification, the Missouri statute is similar to Oregon's. Sec. 69-1401, 1930 Ore. Code Ann. But contrast the definition of "investment" in Sec. 5323, Throckmorton's 1940 Ohio Code Ann. And see also the definition of "intangible personal property" in Sec. 205.131, 1948 Mich. Comp. Laws; and the "exclusive-inclusive" definition of that same term in Sec. 64-901, Burns 1951 Ind. Stat. Ann.

The Missouri legislature did not define either "moneys" or "on deposit," and "moneys on deposit" is neither qualified nor subject to exceptions. We have no doubt that such all-inclusive general classification, "moneys on deposit," without limitation, exception or qualification, includes the funds here involved, viz.: The proceeds of life insurance policies deposited, by agreement with either the insureds or the beneficiaries, with the insurance companies, whether or not the beneficiaries have the right of withdrawal. And we so rule.

Appellants next assert that, unless we accept their views as to the meaning of "moneys on deposit," we must construe the term "to embrace promiscuously almost any form of wealth"; and that, therefore, the act is void for uncertainty. First, the assumption is obviously unwarranted. Second, we have found the provisions of the Act sufficiently definite to show the legislative intent. Contrast State ex rel. Crow v. West Side Street Ry. Co., 146 Mo. 155, 47 SW 959, cited by appellants. Courts do not declare void for uncertainty any statute susceptible to any reasonable construction which will sustain it. State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 SW 2d 185.

Appellants next invoke the "due process" provisions of Art. 1, Sec. 10, 1945 Mo. Cons., and the Fourteenth Amendment to the U. S. Constitution. They base this solely upon their contention, which we have overruled, that they have no beneficial interest in the property taxed. We are required to construe the Act as well as to determine its constitutionality. See State ex rel. American Automobile Ins. Co. v. Gehner, supra. Appellants cite only Renner v. Rappoport, an Ohio Common Pleas Court case, reported in 32 Ohio Opinions 153, 17 Ohio Supp. 110. Although there is a similarity in the facts, that case is readily distinguishable. As stated, the Ohio statutes *expressly except* "contracts of insurance and dividends paid or applied thereunder," and *expressly include* among "deposits" those "which the person owning, holding in trust, or having the beneficial interest therein is *entitled to withdraw in money*." (Our italics.) We overrule this assignment.

However, we agree with appellants that the instant assessments are invalid. No doubt the General Assembly intended to levy the 1947 tax upon the entire yield during calendar 1946. The original Act specifically provided that the tax "*for the year 1947* and each succeeding year shall be based on the yield of said property *during the preceding calendar year*." Sec. 4, p. 1916, 1945 Laws, now substantially Sec. 146.020. (Our italics.) Compare Smith v. Dirckx, 283 Mo. 188, 223 SW 104, 11 ALR 510 ("received in"); United States Trust Co. v. Commissioner of Corporations and Taxation, 299 Mass. 296, 13 NE 2d 6, ("received during").

But the Act itself, and the levies made thereunder, did not become operative until July 1, 1946. The assessments here were for

calendar 1947, and were based upon the properties' yields for calendar 1946 under what are now Secs. 146.020 and 146.030. Thus, the yields upon which the assessments for 1947 were based included yields for six months before the law levying the tax became operative. Under such circumstances, the Act is clearly "retrospective in its operation." The assessments for 1947 violated the provisions of Art. I, Sec. 13, 1945 Cons., prohibiting retrospective operation of laws.

First National Bank of St. Joseph v. Buchanan County, 356 Mo. 1204, 205 SW 2d 726, involved the "Bank Tax Act of 1946," 1945 Laws, pp. 1921 ff., now Secs. 148.010-148.110. The act, like the intangible personal property tax act, became operative July 1, 1946. It levied an annual tax for calendar 1947, "measured by the taxpayer's net income for" calendar 1946. We said: "For the tax year 1947 and thereafter the tax is to be measured by the taxpayer's income 'for the preceding calendar year,' or here 1946. Plainly, therefore, the act which by its own terms is to become operative on July 1, 1946, levies a tax for the year 1946 on the taxpayers, the banks, income for one-half year prior to the operative period of the act, * * *. In so doing, the act clearly falls within the prohibition of another section of the Constitution. * * * Even though a tax to be assessed and collected in one year on the income of the preceding year 'is a tax for the year of its collection, and not for the year in which the income was received' (16 C. J. Sec. 2331, p. 1581), the tax imposed by the Bank Tax Act, however it is viewed, is retrospective in its operation and could not be effective in the circumstances of this case and in any event prior to July 1, 1946."

The bank tax is an annual "substitute" tax for the personal property tax and is measured by net income. Secs. 148.110, 148.030. We see no difference between such a tax and an annual property tax on intangible personal property based upon "yield."

The judgments are reversed and the cases are remanded with directions to remand them to respondent state tax commission with directions to reverse the assessments for 1947 made against these appellants by the director of revenue. *Van Osdol* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by Lozier, C., is adopted as the opinion of the court. All the judges concur.