Joseph **LIBERMAN**, d/b/a Easton Loan Company, Plaintiff-Appellant,

v.

Alphonso **CERVANTES**, Mayor of City of St. Louis, et al., Defendants-Respondents.

No. 58183.

Supreme Court of Missouri, Division No. 2.

July 22, 1974.

**836**

Carl I. Katzen, William R. Kirby, St. Louis, for appellant.

Jack L. Koehr, City Counselor of City of St. Louis, James J. Wilson, Associate City Counselor, St. Louis, for defendants-respondents, City of St. Louis; Benjamin Goins, License Collector of City of St. Louis and Col. Eugene Camp, Police Chief, City of St. Louis.

HOUSER, Commissioner.

Joseph Liberman, a pawnbroker doing business in the City of St. Louis as Easton Loan Company, brought this action against the city, its mayor, license collector, chief of police, and the Attorney General of Missouri, to determine the validity of City Ordinance 55784, approved January 7, 1971. Plaintiff alleged that the ordinance is unconstitutional and void because it violates designated provisions of the federal and state constitutions, and asked for injunctive relief against its enforcement. Tried to the court without a jury the circuit court dismissed the petition upon findings that plaintiff did not show grounds entitling him to the relief for which he prayed; that no violation of plaintiff's constitutional rights was shown; that the

ordinance is a valid and reasonable exercise of the police power of the city. Plaintiff appealed from the judgment. This court has jurisdiction because this appeal involves the construction of the federal and state constitutions.

Section 700.031 of the new city code requires the license collector to procure from the police commissioners, before any pawnbroker's license shall be issued, an endorsement on the back of the application (a) that in their opinion the applicant "has a good moral character"; (b) that applicant has installed "a proper camera" and agreed to use it to photograph every person and every pawn ticket given to such person in connection with all loans and purchases of articles effected or made by him, "and to make such photographs available to any law enforcement officer upon request", and (c) that applicant has agreed not to accept as collateral security or purchase any one of twenty named items unless said items carry a plainly visible serial number or other identifying insignia.

Section 700.061 provides for the keeping of a register of all loans and purchases of all articles effected or made showing the date; names of persons who have left property on deposit as collateral security or taken delivery on its sale; the person's age and motor vehicle operator's or chauffeur's license number, social security number or other designated identification of public record; a full description of the property involved; serial numbers or manufacturer's identifying insignia; the time when the loan falls due; the amount of loan or purchase money; the interest charged and the picture number.

Section 700.130 provides that no pawnbroker shall purchase or accept any article or property as collateral security "unless he shall make a photograph of the person from whom such article or property is being received along with the receipt or pawn ticket given to such person; nor shall any pawnbroker refuse to deliver such photograph to any law enforcement officer upon request in connection with a specific item of stolen property, within one year following the date such photograph is taken."

Section 700.150 authorizes the license collector to revoke licenses issued under the ordinance for willful violation of its provisions, after notice in writing of the violations complained of and an opportunity to have a hearing thereon before the license collector.

Plaintiff testified personally and introduced the testimony of another pawnbroker and that of two persons engaged in the business of selling and supplying photographic equipment. Defendants introduced the testimony of another pawnbroker, the detective sergeant who supervises the investigation of pawnshops, and a professional criminologist.

On this appeal plaintiff asserts error in dismissing his petition and in upholding the validity of the ordinance for six reasons, which we will determine in order.

I.

■ Requiring pawnbrokers to take photographs of customers and make them available to law enforcement officers upon request does not violate search and seizure guarantees. It has long been established that the state may validly regulate the business of pawnbrokers, which is a privilege, not a right, "and he who avails himself of it, and derives its benefits, must bear its burdens, and conform to the laws in force regulating the occupation, if not illegal. * * *" City of St. Joseph v. Levin, 128 Mo. 588, 31 S.W. 101, 102–103 (1895). This business is one of a class where the strictest police regulation may be imposed. 54 Am.Jur.2d Moneylenders and Pawnbrokers § 3, p. 597. The requirement of photographs is reasonably connected with the object and purpose of the ordinance as a whole, which is "to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods

in their shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime." Idem, 31 S.W. 1. c. 103; 54 Am.Jur.2d Moneylenders and Pawnbrokers § 5, p. 600. This requirement is akin to the requirement that pawnbrokers' records be kept, produced and opened for inspection by designated public officials, upheld because it has a direct relation to the prevention of crime and the detection and apprehension of criminals, 54 Am.Jur.2d Moneylenders and Pawnbrokers § 5, p. 600 (see also 79 C.J.S. Searches and Seizures § 36, p. 803), and compares with the requirement of fingerprinting of persons from whom pawnbrokers receive goods, which has been upheld as not improperly interfering with personal liberty. Idem.

## II. and IV.

 The ordinance is not unreasonable, arbitrary, vague and indefinite, lacking in standards or an abuse of power, violative of the due process clause, as contended. Specifically, the words "a proper camera"; "make such photographs available to any law enforcement officer upon request", and "good moral character", are not so vague and indefinite as to violate due process of law. The ordinance is reasonable because of the character of the business, which warrants stricter police regulation than that appropriate for the regulation of ordinary merchants, brokers, and businessmen. City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S.W. 870, 876 (1918). The ordinance is not written in such a manner as to invite capricious enforcement by the exercise of unbridled discretion, or tyranny, on the part of the law enforcement officers. The evidence does not show that in the practical administration of the ordinance the officers of the law have enforced this ordinance against plaintiff or others in an unreasonable or arbitrary manner. The term "law enforcement officer" is not so broad and all-inclusive as to leave the pawnbroker subject to

the whim or harassment of "any person claiming to be a law enforcement officer", as argued. There is nothing to prevent the pawnbroker from requiring any person who represents himself as a law enforcement officer to show his credentials before complying with his request. The words "a proper camera" are words of common usage. They have a plain and ordinary meaning to persons of ordinary intelligence, and are sufficiently understandable to satisfy constitutional requirements as to certainty and definiteness. That is the test. State v. Williams, 473 S.W.2d 382 (Mo.1971); State ex rel. Eagleton v. McQueen, 378 S.W.2d 449 (Mo. banc 1964); Derboven v. Stockton, 490 S.W.2d 301 (Mo.App.1972). Construing the words "a proper camera" in the context of the ordinance as a whole and particularly in connection with the wording in subpar. (b) it is clear that they refer to a camera adequate and sufficient to accomplish the purpose of its requirement, namely, to take a photograph of customers and of the document issued by the pawnbroker. Following the rule that if a legislative act is susceptible of any reasonable construction which will sustain it it will not be declared void for uncertainty, In Re Armistead, 362 Mo. 960, 245 S.W.2d 145 (1952), we find the words "a proper camera" sufficiently explicit to meet constitutional requirements. Likewise, the words "good moral character" are so well understood by the average person that they need no further definition.

## III.

 Appellant asserts that the evils to be remedied and the conditions leading to a change in the ordinance from merely keeping records to the additional requirement of photographs do not demonstrate any justification for the drastic and unreasonable changes made in investigative procedure, and that the changes are unnecessarily harmful to appellant's business. Appellant's evidence indicated that during the two years immediately prior to the enact-

ment of the new ordinance in comparison with the situation after the new ordinance had been in operation for one year the number of items recovered by the Pawn Shop Section, Bureau of Investigation, declined from 186, with a monetary value of $73,852, to 85 items worth $17,780; that considering the statistics on residential burglaries over a 5-year period, "pawnshops as a source of disposal of stolen property has been negligible." Appellant testified that his business had fallen off following enactment of the new ordinance, which he attributed to the fact that many persons are discouraged and insulted by the use of the camera; that they feel they are being photographed "like a common criminal"; and that now they go to Wellston to do their business, where photographs are not required. The city rebutted this testimony with testimony from another pawnbroker that the use of the camera has had no impact on his business. In interpreting the meaning of the above statistics we enter the realm of speculation, but instead of appellant's interpretation it is just as reasonable to conclude that the drop in appellant's business is due to the fact that many of his customers who have taken their business elsewhere are trafficking in stolen goods, and that the beneficent purpose of the ordinance to discourage such traffic has been vindicated.

In any event, the existence or nonexistence of conditions requiring stricter regulation of this business is a matter within the domain of the legislative body, and its determination of the question will not be superseded by the judiciary, where as here there is a sufficient showing of reasonableness to make the question fairly debatable, City of St. Joseph v. Hankinson, 312 S.W. 2d 4 (Mo.1958), and there is no clear showing that the city acted arbitrarily or oppressively. Julian v. Mayor, Councilmen and Citizens of City of Liberty, 391 S.W. 2d 864 (Mo.1965).

1. § 700.130 provides: " * * * Every pawnbroker shall display a notice to his customers in a prominent place to the effect that he is required to photograph every person pawning or selling an item to him, by city ordinance."

## V.

Appellant urges that the requirements with respect to installing a camera and photographing each customer selling or pawning an article places an undue financial burden upon the pawnbroker, without any corresponding justification or need for identification, and further that it requires the pawnbroker to invade the constitutional rights of customers to privacy.

Polaroid equipment purchased for this purpose costs $2,000, but appellant rents his equipment at $15 a month. Film, including developing, costs $16.50 per roll. He uses one roll per month. He had spent close to $400 on equipment to the time of trial. Appellant has failed to demonstrate that the additional cost of doing business imposed by the requirement of photographs is confiscatory, prohibitive, or that it constitutes the taking of property without due process of law. The wisdom of requiring photographs for possible identification of thieves is a matter within the legislative discretion.

With respect to the alleged invasion of the right of privacy enjoyed by his customers, appellant has no standing to raise this question on their behalf. In any event the point is without merit. As pointed out by the Attorney General, when an individual enters a commercial establishment open to the public, subject to regulation under the police power of the state, having been notified that he will be photographed,[1] he waives whatever right to privacy he may otherwise have.

## VI.

Section 700.031 does not unlawfully delegate to the collector of revenue and police commissioners authority to pass upon the good moral character of the applicant, as contended by appellant. Appel-

lant's objection is that the ordinance is silent as to what rules and standards the police commissioners will employ in making the determination whether an applicant has a good moral character; that the discretion "must be circumscribed by sufficient standards to require it to be reasonably, not arbitrarily, exercised." Lodging discretion in the police commissioners to judge of the fitness and character of applicants for licenses as pawnbroker does not vest arbitrary power in the commissioners, but instead requires them to exercise discretion judicially. Thus, in Gundling v. Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L. Ed. 725 (1900), an ordinance authorizing the issuance of a license to sell a commodity if the mayor is satisfied that the person applying is of good character and reputation and a suitable person to be entrusted with the sale of the commodity and requiring the posting of a bond was held not to grant arbitrary power so as to be a violation of the due process of law or equal protection clauses of the Constitution. The Court reasoned that "The mayor is bound to grant a license to every person fulfilling these conditions, and thus the fact of fitness is submitted to the judgment of the officer, and it calls for the exercise of a discretion of a judicial nature by him." 177 U.S. 1. c. 187, 20 S.Ct. 1. c. "Nothing is more common than for the proper men or boards to be appointed, whose duty it is to examine applicants for licenses to various avocations or professions; and the fact that some degree of discretion is necessary in order properly to examine the qualifications of the applicants, and to discharge the duties of examiners, has never before been esteemed the delegation of legislative power. Such ordinances, and examinations thereunder, are in the nature of police functions. * * *" City of St. Louis v. F. Meyrose Lamp Mfg. Co., 139 Mo. 560, 41 S.W. 244, 245 (1897). In State v. Thompson, 160 Mo. 333, 60 S.W. 1077 (banc 1901), the Court upheld the constitutionality of Act April 7, 1897, § 2, providing that the state auditor may issue a license to applicants for pool-selling licenses if satisfied with the good character of the applicant and the good repute of the race course or fairground upon which the applicant may desire to conduct such business. The Court said, "While the legislature could not delegate to the state auditor the power to make laws, it does not follow that it could not delegate to him the power to pass upon the character of persons applicants for license * * *. The power delegated to the state auditor is not the power to make a law, but is the power to determine a fact or thing upon which the action of the law depends, and it cannot be said to be legislative in its character. * * *" 60 S.W. 1. c. 1079. And see 53 C.J.S. Licenses § 38, p. 635; 37 C.J. Licenses § 93, fn. 49, p. 239. Compare Peppermint Lounge, Inc. v. Wright, 498 S.W.2d 749 (Mo.1973), in which the statutory requirement that applicants for liquor licenses be persons "of good moral character" was upheld on various grounds, including the following, which is apropos here: "Furthermore, we are considering the exercise by an administrative official of discretion relating to a police regulation necessary for the protection of the public morals, health, safety and general welfare, where personal fitness is a factor to be taken into consideration, in a situation in which it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative official(s) to implement the will of the (legislative body of the city)." (Our parentheses.) 498 S.W.2d 1. c. 752–753.

■ Appellant further claims that the ordinance lacks adequate standards in that its requirement that the pawnbroker deliver photographs to law enforcement officers upon request is not limited to photographs relating to stolen articles. These photographs are not private papers or records but are public or quasi-public in character, and therefore, under the city's police power to regulate this type of business, they are subject to inspection without a showing that the items in question have been stolen, or that there is probable cause to believe

that the law has been violated. Bowles v. Insel, 148 F.2d 91 (3rd Cir., 1945); Fleming v. Montgomery Ward & Co., 114 F.2d 384 (7th Cir., 1940), cert. den. 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446.

We find no constitutional infirmity in the ordinance in question on any of the grounds advanced by appellant, and therefore affirm the judgment of the circuit court upholding its validity.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.