CITY OF ST. LOUIS, Respondent,

v.

Joseph H. LIBERMAN, Appellant.

No. 59389.

Supreme Court of Missouri,
en banc.

Feb. 14, 1977.

Rehearing Denied March 14, 1977.

**454**

Bernard Susman, St. Louis, Mo., for appellant.

Judith A. Ronzio, Asst. City Counselor, St. Louis, for respondent.

Richard E. Schum, Am. Civ. Liberties Union of Eastern Missouri, East St. Louis, Ill., Francis Ruppert, Am. Civ. Liberties Union of Eastern Missouri, Clayton, amicus curiae.

HENLEY, Judge.

This is an appeal by Joseph H. Liberman (defendant) from two judgments of conviction of violations of ordinances of the City of St. Louis regulating pawnbrokers.

Defendant, a pawnbroker in the City of St. Louis, was charged by information filed in case No. 158293 in City Court with violation in November, 1974, of § 700.130 of Ordinance No. 55784 of the City of St. Louis by unlawfully accepting for pawn a saxophone without making a photograph of the person from whom it was received and of the receipt or pawn ticket given to such person. He was also charged by information in case No. 158294 with violation in November, 1974, of § 700.061[1] of Ordinance No. 55784 by unlawfully failing to keep a register of the loan made on the saxophone showing the photograph number and the age of the person who left the saxophone on deposit as collateral security as well as his social security number or his motor vehicle operator or chauffeur's license number.

Motions to dismiss these informations attacking the constitutionality of Ordinance No. 55784 were overruled and, upon subsequent trial in City Court, defendant was convicted and fined $10 (plus costs) in each case. He appealed from these judgments to the St. Louis Court of Criminal Correction where he again filed a motion to dismiss attacking the ordinance as unconstitutional and void because violative of designated provisions of the federal and state constitutions. This motion was also overruled and, as stated, the trial of the charges resulted in conviction[2] and this appeal. We affirm.

The trier of facts reasonably could find from the evidence that Dorian Isaac pawned a saxophone in early November, 1974, at defendant's pawnshop and received a pawn ticket therefor; that officers of the St. Louis police department assigned to the pawnshop squad, without a search warrant but with consent of the person in charge thereof, made a routine examination of defendant's books and records in the private area of defendant's place of business on November 18, 1974, during which they found listed the saxophone pawned by Mr. Isaac bearing a serial number identical to one listed with the police department as lost or stolen; that defendant did not make a photograph of Mr. Isaac or the pawn ticket given him as required by § 700.130, supra; that the pawn register book contained the name and address of Mr. Isaac and a notation of the transaction with him, but did not contain information as to his age or social security number or his motor vehicle operator or chauffeur's license number (and, of course, did not show a photograph number) as required by § 700.061, supra. The evidence is sufficient to sustain conviction of violation of these sections of the ordinance. There is also evidence that the officers took the saxophone, gave defendant a receipt therefor, and that one of them marked the

---

1. The provisions of these two sections of Ordinance No. 55784 are summarized in *Liberman v. Cervantes, Mayor of City of St. Louis, et al.,* 511 S.W.2d 835, 837 (Mo.1974), a declaratory judgment action in which the defendant herein sought to have this ordinance declared void on the ground that it violated certain provisions of the federal and state constitutions.

2. The punishment imposed on conviction in the St. Louis Court of Criminal Correction was the same as that imposed on conviction in the St. Louis City Court.

pawn register book that it had been "seized" by the police department on the date of this inspection.

The first point briefed by defendant is that his conviction should be reversed because his right under the federal and state constitutions [3] to be secure against unreasonable searches and seizures was violated by "the warrantless search of the nonpublic business area of the pawnshop without consent, the seizure of the saxophone, and the demand for photographs and film."

The evidence does not support the assertion in this point that the officers made a search of the nonpublic business "area" of the pawnshop or any other area thereof.[4] Defendant does not point to any evidence of such search and we have found none in our examination of the record. What the officers did do was examine defendant's books and records as required by the ordinance, and this examination was made while they were in the private or nonpublic business area with the tacit permission of the person then in charge of the business.

The substance of this point is stated in his argument to be that the ordinance is unconstitutional on its face, because it requires him to submit to demands to inspect his books and to demands to surrender photographs and property, all without a search warrant or his voluntary consent.

In *Liberman v. Cervantes,* supra (511 S.W.2d at 837, 838) the court said:

"Requiring pawnbrokers to take photographs of customers and make them available to law enforcement officers upon request does not violate search and seizure guarantees. It has long been established that the state may validly regulate the business of pawnbrokers, which is a privilege, not a right, 'and he who avails himself

of it, and derives its benefits, must bear its burdens, and conform to the laws in force regulating the occupation, if not illegal. * * *' *City of St. Joseph v. Levin,* 128 Mo. 588, 31 S.W. 101, 102–103 (1895). This business is one of a class where the strictest police regulation may be imposed. 54 Am. Jur.2d Moneylenders and Pawnbrokers § 3, p. 597. The requirement of photographs is reasonably connected with the object and purpose of the ordinance as a whole, which is 'to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods in their shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime.' Idem., 31 S.W. l. c. 103; 54 Am.Jur.2d Moneylenders and Pawnbrokers § 5, p. 600. This requirement is akin to the requirement that pawnbrokers' records be kept, produced and opened for inspection by designated public officials, upheld because it has a direct relation to the prevention of crime and the detection and apprehension of criminals, 54 Am.Jur.2d Moneylenders and Pawnbrokers § 5, p. 600 (see also 79 C.J.S. Searches and Seizures § 36, p. 803), and compares with the requirement of fingerprinting of persons from whom pawnbrokers receive goods, which has been upheld as not improperly interfering with personal liberty. *Idem.*"

■ The requirements of the ordinance that pawnbrokers' records be kept and available for examination by police officers of the city, and that photographs of his customers be taken and made available to such officers, are a valid and proper exercise of the police power and do not infringe the constitutional guaranty against unreasonable searches and seizures or defendant's right to privacy.

---

3. Fourth Amendment of the Constitution of the United States and Mo.Const. Art. I, § 15.

4. The pawnshop is divided, apparently for security purposes, into two areas by a partition wall (in which there is a door near one end) which extends from floor to ceiling and wall to wall. The partition wall (and door) is solid from the floor up to a counter top and above the counter it is made up of closely-spaced

vertical iron bars. The area open to the pawnshop's patrons is that part of the building from the partition wall to the front door. On the other side of this wall is the nonpublic area where defendant keeps his books and records and money in a large metal safe and it is from the security of this point that he deals with his patrons on the other side when handling money.

Other points briefed by defendant in this case which were decided against him in *Liberman v. Cervantes,* supra, are:

1.  That the ordinance is vague and uncertain because it fails to state or define with particularity such terms as "proper camera," "law enforcement officers," and "full description of all such property" and therefore violates Mo.Const. Art. I, § 10 and the due process clause of the Fourteenth Amendment. 511 S.W.2d at 838[3–7].

2.  That the regulatory requirements of the ordinance are confiscatory and result in a "taking" of defendant's property without compensation or prior notice and therefore violate Mo.Const. Art. I, § 26 and the due process clause of the Fifth and Fourteenth Amendments. 511 S.W.2d at 838–839[8, 9].

3.  That the warrantless inspection of defendant's pawn register book and the seizure of photographs of his customers without consent violates his and his customers' right to privacy guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. 511 S.W.2d at 837[1] and 839[10].

4.  That § 700.031 of the ordinance is unconstitutional on its face because it unlawfully delegates to the police commissioners authority to pass upon the moral character of applicants for a pawnbroker's license without specifying what standards they are to employ in determining whether an applicant is of good moral character. 511 S.W.2d 839–840[12].

This section of the ordinance does not unlawfully delegate to the license collector authority to designate identifying insignia to be required for identification of the twenty items named in this section of the ordinance. In the first place, the ordinance does not require, authorize or permit the collector to designate such identifying insignia. Subsection c of § 700.031 provides that before issuance of a license by the collector the applicant shall have agreed that he will not accept for pawn or purchase any one of twenty named items (e. g., camera, radio, tape recorder or player, dictating machine, television set) "unless such item shall have plainly visible thereon the manufacturer's serial number or other identifying insignia." The requirement that the item have other identifying insignia plainly visible thereon where there is no manufacturer's serial number is reasonably connected with the general purpose and object of the ordinance as expressed in *Liberman, supra,* at 837, and is made in the interest of the public to facilitate the detection and prevention of crime. The words "other identifying insignia" in the context of this ordinance are sufficiently explicit and so well understood by the average person that they require no further designation or definition.

We have considered the additional authorities cited by defendant on the above points and are not persuaded that our decision in *Liberman v. Cervantes,* supra, should be abandoned. We adhere to that decision.

Two additional points briefed by defendant in this case, not presented in *Liberman v. Cervantes,* supra, are that the ordinance is unconstitutional on its face, because:

(1) it subjects him to involuntary servitude in violation of the Thirteenth Amendment of the U.S. Constitution by compelling him to aid the police in their efforts to capture thieves; and,

(2) it unreasonably singles out pawnshops for regulation despite the similar facility for secondhand stores, junk dealers and antique shops to serve as ready and convenient markets for stolen goods, thus invidiously discriminating against him in violation of Mo.Const. Art. I, § 2 and the equal protection clause of the Fourteenth Amendment.

The critical factor with respect to defendant's present and past attempts to establish the unconstitutionality of this ordinance is that its regulatory provisions represent an exercise of the police power. Each theory upon which he relies in asserting his constitutional challenge is tempered and diluted by the broad discretion and deference accorded to the legislature in exercising its police power to determine both *what* areas will be regulated in the public interest, and to *what extent* such regulation

can go. See: *Day–Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423–424, 72 S.Ct. 405, 96 L.Ed. 469 (1952); *State v. Day–Brite Lighting, Inc.,* 362 Mo. 299, 240 S.W.2d 886, 893[6, 7] (banc 1951). And, generally speaking, the municipal power to regulate by legislation pursuant to the police power is equivalent to State power. *McClellan v. Kansas City,* 379 S.W.2d 500, 504[1–5] (Mo.banc 1964). The determination of what considerations properly call for the exercise of the police power is primarily a legislative, not a judicial question. *Id.* 379 S.W.2d at 505[6, 7]. And, we do not second-guess the judgment of the legislative body as to the wisdom, adequacy, propriety, expediency or policy of the legislative act in question. *State v. Ewing,* 518 S.W.2d 643, 648[7] (Mo.1975) and cases cited therein. Moreover, this court has repeatedly and consistently upheld the legislative judgment to regulate pawnbrokers, by adopting the view that those choosing to engage in the business of pawnbroking may be constitutionally subjected to strict regulation through statutes and ordinances enacted pursuant to the police power. *City of St. Joseph v. Levin,* 128 Mo. 588, 31 S.W. 101, 102–103 (1895); *State v. Lawson,* 352 Mo. 1168, 181 S.W.2d 508, 512[4, 5] (1944); *Liberman v. Cervantes, et al.,* supra, 511 S.W.2d 835, 837[1, 2] (Mo.1974). We reaffirm this view.

We turn to defendant's two newly-asserted constitutional challenges. As with the other constitutional theories argued by defendant in the first *Liberman* case and in this case, these two attacks upon the constitutionality of the ordinance are also affected by the police power principle.

■ Defendant contends that the various provisions of the ordinance which require him to arrange for use of a camera, to photograph all his customers, surrender photos to police upon request, keep his books open for inspection, etc., bring about involuntary servitude, in that he is forced to labor against his will for the benefit of police, thereby transforming his pawnshop "into a police sub-station to aid in the * *

apprehension of thieves." The point is without merit.

As previously stated, the pawnbroking business is one which may be subjected to strict regulation under the police power in order to carry out a perfectly valid legislatively-determined public need. Defendant has voluntarily chosen to engage in this regulated enterprise, and it is true that in connection therewith he must participate in some uncompensated service in order to conform to the intended public needs and purposes manifested by the ordinance.

■ Although the Thirteenth Amendment has been broadened somewhat in more recent times, it is important to remember that the amendment was adopted with reference to conditions that had existed since the foundation of our government. In such context, "the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results * * * The great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers." *Butler v. Perry,* 240 U.S. 328, 332, 36 S.Ct. 258, 259, 60 L.Ed. 672 (1916).

■ The police power to regulate the business of pawnbroking is one such "essential power" by which the government may, without running afoul of the Thirteenth Amendment, exact by law this small measure of uncompensated, but not "undesirable," service to meet the need of the public as a whole. A compelling factor for rejecting defendant's claim of involuntary servitude, however, is the fact of his voluntary venture into the pawnbroking business and the attendant regulations. As counsel for the city very accurately pinpoints it: "If [he] feels himself enslaved, he is responsible for his own bondage."

■ Defendant's precise contention with respect to his equal protection claim is that the ordinance, which requires photographs and other measures to deter fencing of stolen property and to aid in the apprehension of thieves, creates an unreasonable

classification by singling out pawnbrokers for regulation, inasmuch as junk dealers, secondhand shops, and antique businesses are also likely markets for stolen property. He claims this disparate treatment given "similarly-situated" businesses is without a rational basis and results in invidious discrimination. This contention is also without merit.

It should be noted at this point that, apart from defendant's assertion that junk dealers, secondhand shops, etc., are businesses similarly-situated to pawnshops, there is little, if any, evidence in the record to support the proposition that these businesses are at all comparable. Nevertheless, we consider the merits of his equal protection claim. The rules of judicial review of a legislative classification which is challenged as a denial of equal protection are settled:

"The equal protection clause does not forbid a State to create classes in the adoption of regulations under its police power, but it allows wide discretion, precluding only that done without any reasonable basis and therefore arbitrary, or as otherwise stated, it forbids invidious discrimination. *Morey v. Dowd,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 * * * (1957); *Kansas City v. Webb,* 484 S.W.2d 817 (Mo.)" *Howe v. City of St. Louis,* 512 S.W.2d 127, 132[4] (Mo.banc 1974). One who assails the classification has the burden of showing that it does not rest upon any reasonable basis and is purely arbitrary. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (1911). And, a classification will be sustained if any state of facts reasonably can be conceived to justify it. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *State v. Ewing,* 518 S.W.2d 643, 648[7] (Mo. 1975).

It is easy to perceive a reasonable basis for the legislative decision to regulate pawnbrokers by means of this ordinance in order to aid law enforcement. Beyond this threshold finding that the classification as to pawnbrokers rests upon a ground relevant to the achievement of the legislative objective and is, therefore, not purely arbitrary, we must disregard all matters relating to the wisdom, adequacy, propriety, expediency or policy of the act in question. *State v. Ewing,* supra, 518 S.W.2d at 648[7]. The same deference is accorded city ordinances. *McClellan v. Kansas City,* supra, 379 S.W.2d at 504[1–5]; *Howe v. City of St. Louis,* supra, 512 S.W.2d at 132[4, 5].

Defendant urges invalidity of the ordinance on equal protection grounds for its failure to extend its regulation to junk dealers, and all other businesses which might present possible variations of the potential evil which the ordinance is designed to protect against. However, a legislative classification assailed on equal protection grounds is not rendered arbitrary or invidious merely because it is under-inclusive. Clearly, there is no constitutional requirement that regulation must reach every class to which it might be applied; that the legislature must regulate all or none. *State v. Ewing,* supra, 518 S.W.2d at 648[6]. The state (or city) is free to regulate one step at a time, recognizing degrees of harm and addressing itself to phases of a problem which presently seem most acute to the legislative mind. See: *Williamson v. Lee Optical,* 348 U.S. 483, 488–489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *State v. Ewing,* supra, 518 S.W.2d at 648[6], and cases cited therein.

We decline to strike down this ordinance. It has not been demonstrated that it is an unreasonable or arbitrary exercise of the police power of the city in any of the respects asserted.

The judgment is affirmed.

All concur.

RENDLEN, J., not participating.