Katherine HEIBEL, Plaintiff-Appellant,

v.

George P. HEIBEL, Defendant-Respondent.

No. 31136.

St. Louis Court of Appeals.

Missouri.

March 19, 1963.

Donald H. Clooney, Thomas, Busse, Weiss, Cullen & Godfrey, St. Louis, for appellant.

Walter L. Brady, Jr., St. Louis, for respondent.

BRADY, Commissioner.

Appellant, hereinafter referred to as the plaintiff, filed her petition for divorce from respondent, hereinafter referred to as defendant, who answered by general denial and filed his cross bill. The trial court denied plaintiff a decree of divorce and denied defendant a divorce on his cross bill, ordered plaintiff's petition and defendant's cross bill dismissed, and awarded plaintiff the sum of $150.00 for attorneys' fees. The plaintiff appeals. The defendant has not appealed from the judgment nor has he favored us with a brief in plaintiff's appeal.

The plaintiff alleged general indignities in that the defendant "exhibited" a cross and quarrelsome nature and disposition; that he failed to treat her with kindness and affection and has been cold and indifferent toward her; that he told her on numerous occasions he did not love her and they would be better off living apart since he did not intend to fulfil his duties as her husband; that he struck her on numerous occasions and threatened her with physical violence and placed her in fear for her safety; that defendant did not want any company at the home and restricted the plaintiff's grandchildren from visiting her; that he used abusive language to her and insulted her in front of their friends; and that he refused to go with her to church or take her to church because " * * * the church would request collections." Plaintiff's petition prayed for a divorce and for alimony pendente lite and permanent, "suit money" and attorneys' fees.

Defendant denied these allegations and in his cross bill alleged that plaintiff was guilty of the following general indignities: that she drank to excess, " * * * was intoxicated on numerous occasions, and when under the influence of liquor would vomit on the floor and rugs of the home * * *"; that she was discharged from one or more jobs for being drunk; that she was "cross

and quarrelsome"; that she was continually quarreling about money and when defendant gave her money she would give it to her children by a previous marriage; that she would not stay home and keep house but insisted on working against his wishes; and that plaintiff called him " * * * vile and vicious names" on numerous occasions. Defendant prayed for a divorce.

Only a brief statement of the evidence will be necessary. Plaintiff's evidence was that she was a woman fifty-six years of age and left her husband because she was cursed and mistreated and awakened late at night when defendant came home from work drunk; that her husband never asked her to quit working and never gave her money for clothes which she bought from her own wages; that she kept house, cooked, made defendant's breakfast and fixed his lunch, did her own washing, ironing and cleaning; that her church was too far from the home to walk and she couldn't drive an automobile but defendant refused to take her; that defendant resented visits to the home from her children of a former marriage and "Sometimes when they came he would go in the bedroom, shut the door, and stay there for the entire evening"; that her husband would wake her up at midnight when he came home " * * * punching and arguing about things that happened a long time ago"; that she remembered him striking her on a lot of occasions, one of which occurred in the summer before trial when defendant called for plaintiff to bring him a bottle of beer as he was cutting the grass and when he came into the house and saw plaintiff and a "girl friend" splitting a beer he " * * * punched me on the lip and said, 'Who said you could have a beer?'"; that he refused to let her have the television set on past 10:30 when " * * * the lights were put out and I had to go to bed" and gave her instructions not to have the set on during the day; that her husband would curse and swear and tell her how stupid she was if she broke a dish or a cup; and that he insulted her in public "Quite often" and described one occasion when, on a

trip to Illinois with neighbors, the neighbors stopped to get a drink in a restaurant and asked the plaintiff what she wanted and the defendant said " * * * 'Nothing.' I said, 'Couldn't we have something now?' He cursed me in front of people I never saw in my life before." Her further testimony was that she was not then working and had no income except what her children gave her; and that her husband owns his house alone but "quite a bit" of the furniture in the house was hers. On cross-examination, plaintiff denied that she was discharged from her employment on two occasions for drinking.

The plaintiff then produced Helen Juergens, a personnel worker at one of the places plaintiff had been working, who testified that she was not discharged for drinking. Vito Ventimiglia, supervisor of personnel at the other place of employment testified that she was not discharged for drinking at that employment but that she had left because she felt entitled to a raise.

Mrs. Mary Broyles testified that she had known the plaintiff for over twenty years; that she was present when the defendant struck the plaintiff because she and the plaintiff were splitting a bottle of beer; that she had heard him call the plaintiff "stupid"; and that plaintiff's reputation as to truthfulness, morality, and good moral character was "very fine."

Alice Broadhead testified that she had known plaintiff for over twenty years; that she worked with her and that plaintiff's reputation for truthfulness and morality was "very good."

Mrs. Power, plaintiff's daughter by a previous marriage, testified that when she and plaintiff's grandchildren came to visit "He would say, 'Are you here again?'" and " * * * he frequently went in the bedroom and closed the door."

Plaintiff's evidence as to the financial condition of the respective parties was that under doctor's order she could not work and it cost her approximately $155.00 a

month to live. Plaintiff then presented the cashier of the bank where defendant did business who testified defendant had a savings account of $2,247.55.

The defendant's evidence was that he treated his wife with kindness and affection, supported her and provided "Everything she wanted." He testified that there were times when the plaintiff was "very good" but this was not so when she drank to excess; that he had seen his wife intoxicated a lot of times, "probably" twice a month and that if he was working nights he would find her lying on the floor drunk with her friend, Mrs. Broyles; that if he was working days, she came home drunk at night. That a couple of times when he came home from work, he found Mrs. Broyles lying on the floor drunk with nothing on but a petticoat and that would be over her head and his wife would be lying on the davenette with her pajamas on; that he did not approve of his wife working and this resulted in quarrels between them; and that many times she called him names, but when asked whether those names were profane or vile as he had alleged in his verified petition, he stated "They wasn't too bad." The defendant further testified that he had never struck his wife, threatened her nor told her that they would be better off separated; that he did not refuse to allow guests to visit in his home and when questioned about the visits of the grandchildren, stated that he did not refuse to allow them to visit in his home and that " * * * I raised all three grandchildren. We both did"; that he never used abusive language to his wife in front of others nor refused to give her money for necessities or to give to the church; and that he objected to Mrs. Broyles coming to his home, "Because she was foul mouthed and drinks * * *" The defendant testified that he did not see the plaintiff drink hard liquor but he knew that she drank hard liquor at her sister's and son-in-law's homes because " * * * mostly every time" she went there, she would come home and " * * * throw up on the floor." Defendant stated that he drinks beer at work and at other places and keeps some around the home but he stated it was "Not a large amount. Maybe a case or two cases"; that on the occasion when he found Mrs. Broyles drunk in his home, he told her to get out and plaintiff got angry and told Mrs. Broyles to go into a bedroom where Mrs. Broyles slept all night while he and his wife slept in the other bedroom. He stated that he took her to church every Sunday for two and one-half years after the marriage in 1956 but since that time he has refused to take her to church even though she had asked him to do so. With respect to his financial condition, he testified that his take-home pay was $107.00 per week and that he considered $15,000.00 a fair market value for his home which he owned in his own name free and clear of any indebtedness; that he owns a 1956 Mercury automobile which is free and clear of any indebtedness and that he does not owe any money at all.

In rebuttal, the plaintiff again put Mrs. Broyles on the stand and she denied that she was drunk in the plaintiff's house and further testified that she had never seen the plaintiff drunk. Also as rebuttal, Richard Power, plaintiff's son-in-law, testified and denied that Mr. Heibel helped raise his children, the plaintiff's grandchildren, in any way.

 The scope of this court's review in divorce cases is too well known to require citation. We try such cases de novo on the record before us and reach our own conclusions. We will apply the rule of deference where there is a sharp conflict in the evidence since the trial court had an opportunity to observe the witnesses upon the stand, but this does not mean that we can invoke that rule to avoid our duty and responsibility to reach our own conclusions from a review of the evidence.

 The factual statement set out herein together with the brief résumé of the the evidence presented might at first

blush seem to present a proper case for application of the rule of deference and affirmation of the trial court's judgment. A more careful reading of the transcript and a consideration of the evidence in more minute detail than good practice will allow to be set out in this opinion compels the opposite result. Defendant's evidence was again and again directly and unequivocally contradicted by independent witnesses. The sworn statements in his cross bill were again and again proved to have been made without any reasonable foundation so far as this record discloses. For example, the defendant alleged in his verified petition that plaintiff lost several jobs because of drinking. Yet the personnel supervisors at those places of employment testified this was not the case and her character witnesses testified that over an acquaintanceship of twenty years they had never seen her intoxicated. He testified he did not strike the plaintiff yet another witness testified that she was present on one occasion when he did so. Although his verified petition alleged that plaintiff called him vile names, his testimony was that "They wasn't too bad." There are other examples in the transcript but it will serve no useful purpose to set them out herein. We do not reach our decision on the basis that plaintiff had other witnesses and defendant had none for numbers alone afford no guarantee of truth. We reach our decision herein on the basis that when the whole record is carefully and fairly weighed, the result is that we are compelled to find the evidence so preponderates in favor of the plaintiff that the trial court's conclusion is clearly erroneous. It follows that plaintiff must be awarded a decree of divorce and defendant, not being an innocent and injured party, must be denied the relief prayed on his cross bill.

 A divorce action in this state is a statutory action at law but nevertheless it partakes of a suit in equity and is tried before us de novo as being in an equitable nature. May v. May, Mo.App., 294 S.W. 2d 627. We are to direct the entry or to enter such judgment as the trial court should have entered. White v. White, Mo. App., 290 S.W.2d 178.

 The evidence as to defendant's financial position is not in dispute and was largely given by the defendant himself. He has an income of $107.00 per week take-home pay and owes no bills of any kind. He has a savings account of $2,247.55, a 1956 Mercury automobile which is free and clear and a home on which he put a fair market value of $15,000.00. The home is unencumbered. Plaintiff's evidence as to her requirements of $155.00 a month is also undisputed albeit the evidence to support those requirements is very sketchy. She is presently under doctor's care and the parties stipulated that the doctor's advice was that she was not to work. In view of these facts and having in mind that a proper award is one that correctly weighs the plaintiff's requirements and standard of living in the light of the defendant's ability to pay, the plaintiff should have the sum of $155.00 a month as monthly alimony.

Accordingly this judgment is reversed and the trial court directed to enter a decree denying defendant's divorce and granting plaintiff a divorce and awarding her the sum of $155.00 a month as alimony together with the sum of $150.00 as attorneys' fees; the defendant to pay the costs of the trial and the appeal. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the trial court directed to enter a decree denying defendant's divorce and granting plaintiff a divorce and awarding her the sum of $155.00 a month as alimony together with the sum of $150.00 as attorneys' fees; the defendant to pay the costs of the trial and the appeal.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.