STATE of Missouri, Respondent,

v.

Jimmy Leon WILLIAMS, Appellant.

No. 68278.

Supreme Court of Missouri,
En Banc.

April 14, 1987.

Janet M. Thompson, Office of State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Jimmy Leon Williams, was convicted of first degree sexual abuse and third degree assault in violation of sections 566.100 and 565.070, RSMo 1986. Upon conviction, he was sentenced to concurrent terms of imprisonment of five years and one year. Following rendition of judgment and imposition of sentence, the cause was transferred to this Court to determine the constitutionality of a Missouri statute. Mo. Const. art. V, § 3. We affirm.

The convictions stemmed from alleged incidents of sexual abuse and other assaults involving appellant's eight-year-old stepdaughter. Over appellant's objections, the child was allowed to testify about the incidents of abuse without a prior determination of competency. Appellant urges that section 491.060, RSMo 1986, which allowed the child to testify without any further qualification, denied him equal protection under the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Mo. Const. art. I, § 2. More specifically, he complains that section 491.060(2) "treats, in a disparate fashion, appellant and all those similarly situated who are alleged to have committed an offense under Chapters 565, 566 or 568, RSMo, and who are alleged to have committed the offense against a person who is under ten years old and who will testify at trial because, in that situation, the child witness is irrebuttably presumed to be competent to testify while in all other situations, the child witness is presumed incompetent to testify."

Insofar as pertinent to this appeal, section 491.060 reads as follows:

The following persons shall be incompetent to testify:

\*    \*    \*    \*    \*    \*

(2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly;

provided, however, that except as provided in subsection (1) of this section, a child under the age of ten who is alleged to be a victim of an offense under chapter 565 [offenses against the person], 566 [sexual offenses], or 568 [offenses against the family], RSMo, shall be considered a competent witness and shall be allowed to testify without qualification in any judicial proceeding involving such alleged offense. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony;[1] ....

This section merely creates rebuttable presumptions that a child over ten years old is competent to testify and that a child less than ten years old is not competent to testify. *State v. Young,* 477 S.W.2d 114, 116 (Mo.1972); *State v. Ball,* 529 S.W.2d 901, 904 (Mo.App.1975). Stated another way, it provides that a child under ten years of age is a competent witness only if the child appears to the trial judge to have the capacity both to receive just impressions and to relate them truthfully. The 1984 proviso in question then simply removes the need for a judicial determination of competency in those cases where a child of tender years is a victim of one of the delineated offenses.

Scholars and legislators alike have for many years debated the propriety, or at least the permissible scope, of a child's testimony. The goal has always been to attain a proper balance between the competing interests of the child and those of the accused. The harsh confrontation between those interests arises predominantly in cases where, as here, the child is the only eyewitness to the crime. More often than not in these cases the only direct evidence connecting the accused with the crime is the testimony of the child. Other circumstantial evidence merely shows that the crime occurred. Consequently, offenders, who have chosen a young child as their victim, often avoid conviction when the child's testimony is unavailable. On the other hand, there is the accused's interest in obtaining a fair trial. Proponents of the accused's interest argue that the testimony of a truly incompetent young child increases the danger of sentencing an innocent man.

The modern trend favors enactment of legislation similar to the Missouri competency statute. To date, three other states[2] have enacted similar statutes which presume the competency of certain child victims. Comment, *The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?,* 40 U.Miami L.Rev. 245, 273 n. 136 (1985). The position taken in this type of legislation is statutorily, though not conceptually, innovative. It was said long ago that:

A rational view of the peculiarities of child nature, and of the daily course of justice in our courts, must lead to the conclusion that the effort to measure a priori the degrees of trustworthiness in children's statements, and to distinguish the point at which they cease to be totally incredible and acquire suddenly some degree of credibility, is futile and unprofitable. The desirability of abandoning this attempt and abolishing all grounds of mental or moral incapacity has already been noted in dealing with mental derangement. The reasons apply with equal or greater force to the testimony of children. Recognizing on the one hand the childish disposition to weave romances and to treat imagination for verity, and on the other the rooted ingeniousness of children and their tendency to speak straight forwardly what is in their minds, it must be concluded that the sensible way is to put the child upon the stand to give testimony for what it may seem to be worth. To this result legislation must come. To be genuinely strict in applying the existing requirement is either impossible or unjust; for our demands are contrary to the facts of child nature; ....

---

**1.** A 1984 amendment added the proviso to subdivision (2).

**2.** These states are: Colorado; Connecticut; and Utah. *See,* Colo.Rev.Stat. § 13–90–106 (1973);

Pub.Act 85–587, § 2, 1985 Conn.Legis.Serv. 463 (West); Utah Code Ann. § 76–5–410 (Supp. 1985).

2 Wigmore, *Evidence* § 509 (Chadbourn Revision 1979). Similarly in Cleary, *McCormick on Evidence*, § 62 (1984), the proposition was stated as follows:

> The major reason for disqualification of the persons mentioned in this section to take the stand is the judges' distrust of a jury's ability to assay the words of a small child.... Conceding the jury's deficiencies, the remedy of excluding such a witness, who may be the only person available who knows the facts, seems inept and primitive. Though the tribunal as unskilled, and the testimony difficult to weigh, it is still better to let the evidence come in for what it is worth,....

Since the policy choice was made by the General Assembly when it enacted the 1984 proviso, we need only decide whether the statute is constitutional. In doing so, we must first ascertain the proper standard of review. As was recently stated in *Belton v. Board of Police Commissioners*, 708 S.W.2d 131, 139 (Mo. banc 1986),

> In equal protection claims the first step is to ascertain whether the statutory scheme "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution.... *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 17 [93 S.Ct. 1278, 1288, 36 L.Ed.2d 16] (1973)"; *State Board of Registration v. Giffen*, 651 S.W.2d 475, 479 (Mo. banc 1983). If so, the statutory scheme receives strict judicial scrutiny to ascertain whether the classification is necessary to a compelling state interest. *Id.* If the classification neither burdens a suspect class, nor impinges upon a fundamental right, the only issue is whether the classification is rationally related to a legitimate state interest. *Friedman v. Rogers*, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *Giffen, supra*, 651 S.W.2d at 479. In such a situation the burden is on the person attacking the classification to show that it does not rest upon any reasonable basis, and is purely arbitrary. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911); *City of St. Louis v.*

*Liberman*, 547 S.W.2d 452, 458 (Mo. banc 1977). Under this analysis a classification will be upheld if any state of facts can be reasonably conceived which would justify it. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Liberman, supra*, 547 S.W.2d at 458.

Appellant attempts to invoke strict scrutiny by maintaining that section 491.060(2) infringes on a fundamental right, namely, his due process right to a fair trial. The group of rights expressly held to be "fundamental" is not large. The list includes: (1) *the right to vote, Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); (2) *the right to exercise first amendment freedoms, San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); (3) *the right to privacy, Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); and (4) *the right to travel, Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

The above list may not be all inclusive. Arguably, other rights have been implicitly recognized as fundamental rights. As one commentator stated:

> The Court has implicitly recognized a right to fairness in the criminal process as a fundamental right although its "fundamental" nature has not been the subject of a specific decision ... [and] the Supreme Court has recognized that there is a right to fairness in procedures concerning individual claims against governmental deprivations of life, liberty, or property. Again, this right is not reflected in a specific decision but is, rather, an implied recognition of the fundamental nature of the due process clause in those decisions dealing with "procedural due process" rights.

2 R. Rotunda, J. Nowak and J. Young, Treatise on Constitutional Law Substance and Procedure, § 15.7 (1986) [footnotes omitted]. However, if the statutory presumption of competency under section 491.-060(2) is not fundamentally unfair to the criminal proceeding, we need not decide

whether due process concerns are "fundamental" for purposes of equal protection analysis.

■ At the outset, it must be noted that the well-established rule is that the legislature has plenary power to prescribe or alter rules of evidence, including those involving competency of witnesses, in the absence of an express constitutional guarantee to the contrary. *Spencer v. State of Texas*, 385 U.S. 554, 568–69, 87 S.Ct. 648, 656, 17 L.Ed.2d 606 (1967). *See also*, 29 Am.Jur.2d Evidence, § 9 (1967); 81 Am.Jur.2d Witnesses § 70 (1976), *citing e.g.*, *Burk v. Putman*, 113 Iowa 232, 84 N.W. 1053 (1901). In the words of Justice Cardozo:

> [A state] is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.... Its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar. [citations omitted]

*Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

Appellant's due process claims find no support in the general rule stated above. The prevalent theme in due process cases is that in a criminal prosecution the accused must be allowed to present a complete defense.

> If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him.

*Mobile, J & K.C.R. Co., v. Turnipseed*, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910). This principle has been consistently reaffirmed by the Court.

Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense.

*California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). Similarly, in *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), the Court explained that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."

Section 491.060(2), by allowing the child victim to testify without any further qualification did not deprive appellant of a meaningful opportunity to defend against the abuse charges. The statute merely insured that the child could testify and did not affect appellant's right to raise and pursue whatever defenses he may have had. He had the opportunity to cross-examine the child as to issues related to her maturity and her ability to recollect and relate the events of which he was accused.

■ In our view, appellant was not deprived of a fair trial by section 491.060(2). Nor is it claimed that the classification draws upon some "inherently suspect distinctions such as race, religion or alienage." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Therefore, because the classification neither impinges on a fundamental right nor burdens a suspect class, the legislation need only be rationally related to a legitimate governmental interest.

■ The State of Missouri has a legitimate interest in protecting the health, safety, and welfare of its citizens, including that of its children. This includes the enactment of procedural and evidentiary rules in order to effectively enforce its criminal statutes. We must recognize that "child abuse is one of the most difficult crimes to detect and prosecute" because of an inherent lack of evidence linking the

accused to the crime. *Pennsylvania v. Ritchie,* ___ U.S. ___, ___, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987). Contrary to appellant's argument, the statute does not arbitrarily classify various criminal offenders. The presumption of competency is only made applicable to those sections enumerated in subdivision (2) where the child's testimony is critical to the prosecution. Such a presumption is not necessary in criminal prosecutions where the child's testimony is not the only direct link between the accused and the crime. Thus, a rational distinction among various offenses and offenders was made by the General Assembly in furtherance of the legitimate state interests. We find no denial of equal protection under the law. ........ ........

■ Appellant's final argument is that he was denied his right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 18(a) of the Missouri Constitution.

Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross examination.

*Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam). The principal interests thus protected by the Confrontation Clause are the rights of face-to-face confrontation at trial and cross-examination. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). It is simply a "trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Ritchie, supra,* ___ U.S. at ___, 107 S.Ct. at 999. Appellant had an opportunity for effective cross-examination of his step-daughter and did in fact cross-examine her as to all issues. There is no ground for holding that his rights to confrontation under the Sixth Amendment and Article I, § 18(a) of the Missouri Constitution were denied.

The judgment is affirmed.

HIGGINS, C.J., and BILLINGS, ROBERTSON and RENDLEN, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I cannot see the rationale for allowing a child under the age of 10 to testify without a preliminary screening in some criminal prosecutions but not in others.

The principal opinion states that "... offenders, who have chosen a young child as their victim, often avoid conviction when the child's testimony is unavailable." I respectfully doubt this undocumented assertion, and question even more whether a child's unavailability is often brought about because the trial judge excludes the testimony. Trial judges, in my experience, almost always allow a child who is capable of giving coherent answers to questions to testify.

The principal opinion finds rationale for the statutory distinction because the child may testify without restriction "where the child's testimony is critical to the prosecution," whereas there is a preliminary screening "where the child's testimony is not the only direct link between the accused and the crime." Thus the child is subject to preliminary scrutiny when the testimony is relatively unimportant, but not when the testimony is vital.

The purpose of the revised statute, then, is to facilitate the conviction of persons charged with child abuse, by reducing the protection afforded the accused. Less process of law is apparently due an accused molester than other defendants enjoy.

In *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), a state statute provided for the sterilization of persons convicted of a limited group of criminal offenses. The Supreme Court of the United States struck the statute down on equal protection grounds, finding no rational basis for distinguishing between persons convicted of larceny, who were subject to sterilization, and those convicted of embez-

zlement, who were not. The present statute likewise demonstrates no rational basis for the distinction drawn.

I do not have to express an opinion as to whether the legislature could completely abolish the provisions for preliminary scrutiny of a child witness. I note the arguments of the learned commentators, but would wonder whether a trial judge does not have the inherent power and duty to determine threshold questions of testimonial capacity, and to exclude evidence which is inherently unreliable. *Cf. Alsbach v. Bader*, 700 S.W.2d 823 (Mo. banc 1985). If so, there may be a due process problem if the statute before us is read as prohibiting any such scrutiny.

Sometimes I believe that the repulsion with which we view child abusers makes us less vigilant in ensuring that child abuse defendants have a reasonable opportunity to defend themselves. In *State v. Taylor*, 726 S.W.2d 335 (Mo. banc 1987) we held that the defendant's reputation for truth and veracity was not material in a child molester's case, yet in *State v. Brown*, 718 S.W.2d 493 (Mo. banc 1986), we would not allow a defendant charged with abusing a stepchild to show that there was a good family relationship. Do we rather assume that charges of child abuse are probably true, instead of applying a presumption of innocence?

I am confident that prosecutors can obtain convictions in the great majority of meritorious child abuse prosecutions under the rules which apply generally to criminal cases. I fail to perceive any "modern trend" simply because three other states have statutes similar to ours.

The judgment should be reversed. The error cannot be cured without a new trial, because the child witness is now older and the trial court could not make a reliable determination of her capacity to testify several years ago. *Cf. Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).