STATE of Missouri, Plaintiff-Appellant,

v.

Robert J. BEINE,
Defendant-Respondent.

No. 52600.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 2, 1987.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

David O. Danis, St. Louis, for defendant-respondent.

REINHARD, Judge.

The state appeals an order suppressing the testimony of R.R., a female child who is the alleged victim of the sexual offenses with which defendant is charged. We reverse and remand.

Defendant was charged with attempted rape [§ 566.030 and § 564.011, RSMo 1986] and with three counts of sodomy [§ 566.-060]. An additional charge of use of a child in a sexual performance [§ 568.080] was dismissed by the state. During a pretrial conference on May 12, 1986, defendant made an oral motion in limine to exclude a videotape of R.R.'s testimony at the preliminary hearing, asserting that she was incompetent to testify because she "does not know right from wrong, does not understand truth and falsehood, is not responsive to questions, and did not really understand what she was testifying about." This argument was coupled with a challenge to the constitutionality of § 491.060(2), RSMo 1986. Defendant's motion was later expanded to include an assertion that R.R. is incompetent to testify because she is mentally incapacitated under § 491.060(1).

The court announced that it would hear evidence on the question of whether R.R. is mentally incapacitated and defendant presented the testimony of Dr. Ann Dell Duncan, a psychologist who had conducted an analysis of R.R.'s testimony at the preliminary hearing. Basing her conclusion on the videotape and transcript of the preliminary hearing as well as her professional experience, she stated:

It is my opinion that [R.R.] at the age of the tape that we saw, age three and a half, based on the behavior that I observed, was too mentally incapacitated to be able to tell the difference between fact and fantasy, and accurately report or describe events.

Dr. Duncan further testified that it is her opinion that R.R. does not have the "capacity" to understand the difference between truth and falsehood. She also testified that R.R. was "somewhat below average" in terms of "language development" and was "emotionally immature for her age." During cross-examination of Dr. Duncan the following exchange ensued:

Q. Now is the incapacity you testified to on the part of [R.R.] as a major function of that age, is that one of the major contributing factors to your conclusion?

A. Yes.

Q. You're not saying [R.R.] is retarded, are you?

A. No.

Q. Do you have any evidence at all as to whether or not [R.R.] had been born with any birth defects or had any organic brain damage?

A. Based on my observation, I would say no.

Q. So basically you're saying as I understand it, that the emotional incapacity of [R.R.] is a function of age and emotional development?

A. Age, language, and emotional development, yes.

When asked what she meant by "incapacitated" Dr. Duncan replied:

Well, capacity has four or five criteria; the ability to accurately perceive impressions of fact, the capacity to recollect those impressions accurately, a certain level of maturity, the ability to communicate what was perceived, and the capacity to understand truth and falsity and govern your behavior accordingly when under oath.

She conceded that she had neither tested nor interviewed R.R.

The state then offered portions of the deposition of its expert witness, Dr. Rosalie Sterneck, a psychologist who interviewed R.R. Dr. Sterneck testified that R.R. "was far above the average three year old child in terms of her verbal capacity." The state also called R.R. as a witness, and the court reviewed the transcript and videotape of R.R.'s testimony at the preliminary hearing.

After R.R.'s testimony Dr. Duncan was recalled. Although she noted that there were "significant differences," she believed R.R.'s ability is "not essentially" different from that demonstrated on the videotape.

The court then continued the hearing and, with the consent of both parties, appointed a neutral expert to examine the child. The hearing was resumed on November 25, 1986, at which time the state presented testimony from the expert appointed by the court, Dr. Elizabeth Nettles. Dr. Nettles, a psychologist, interviewed R.R. on six occasions and conducted various tests. She testified that R.R. had a verbal I.Q. of 116, performance I.Q. of 97, and a full scale I.Q. of 108. Scores between 90 and 110 are considered average, so R.R.'s verbal I.Q. actually was in the "high average" range. She testified that R.R.'s physical and language development was normal, as were her motor skills. Dr. Nettles also concluded that R.R.'s verbal and manual expression skills were above average. R.R. scored just below the average range in a test pertaining to visual sequential memory. Considering all of the tests, Dr. Nettles opined that R.R. was "at least average." She also testified that there is a strong correlation between test scores taken at different times, and that, therefore, the abilities of R.R. at age 4½, when she was tested, are probably reflective of her abilities at the time of the alleged crimes, when she was approximately 2½ years old.

Dr. Nettles testified that in her opinion, R.R. has the "capacity" to be a witness. She felt that R.R. understood "what it meant to tell the truth" and stated she had "no reason to think" R.R. would not be able to observe, register, and recall a shocking event such as sexual molestation. She also saw no evidence that R.R. has any emotional problems. When asked by the court whether R.R. has "the ability to recall and register events that occurred to her when she was two and a half" Dr. Nettles replied, "I have made the inference that she probably does. I am not a hundred percent sure of that."

The trial court entered an order declaring that R.R.'s testimony "is suppressed as she is mentally incapacitated and, therefore, incompetent to testify under provision of § 491.060(1), RSMo." It is from this order that the state appeals. We note initially that the contested judgment is appealable under § 547.200.1(2), RSMo 1986, as an order suppressing evidence.

Our resolution of this appeal requires an analysis of § 491.060(1) and § 491.060(2), RSMo 1986. That statute provides:

> Persons incompetent to testify—exceptions, children in certain cases.—The following persons shall be incompetent to testify:
>
> (1) A person who is mentally incapacitated at the time of his production for examination;
>
> (2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly; provided, however, that except as provided in subdivision (1) of this section, a child under the age of ten who is alleged to be a victim of an offense under chapter 565, 566 or 568, RSMo, shall be considered a competent witness and shall be allowed to testify without qualification in any judicial proceeding involving such alleged offense. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony.

The language pertaining to child victims was added in 1984, and the constitutionality of the statute as amended was considered by the supreme court in *State v. Williams*, 729 S.W.2d 197 (Mo. banc 1987). In *Williams* the court stated:

> This section merely creates rebuttable presumptions that a child over ten years old is competent to testify and that a child less than ten years old is not competent to testify. *State v. Young*, 477 S.W.2d 114, 116 (Mo.1972); *State v. Ball*, 529 S.W.2d 901, 904 (Mo.App.1975). Stated another way, it provides that a child under ten years of age is a competent witness only if the child appears to the trial judge to have the capacity both

to receive just impressions and to relate them truthfully. *The 1984 proviso in question then simply removes the need for a judicial determination of competency in those cases where a child of tender years is a victim of one of the delineated offenses.*

729 S.W.2d at 199 (emphasis ours). The defendant in *Williams* argued that allowing the child victim to testify without a determination of competency denied him due process of law. The court rejected that contention, noting:

Section 491.060(2), by allowing the child victim to testify without any further qualification did not deprive appellant of a meaningful opportunity to defend against the abuse charges. The statute merely insured that the child could testify and did not affect appellant's right to raise and pursue whatever defenses he may have had. He had the opportunity to cross-examine the child as to issues related to her maturity and her ability to recollect and relate the events of which he was accused.

729 S.W.2d at 201.

It is obvious from the language of the statute and the *Williams* decision that children who are victims of the specified offenses can testify whether or not they are competent witnesses under the traditional criteria.[1]

■ Defendant argues in support of the trial court's order that R.R. was "mentally incapacitated" within the meaning of § 491.060(1), and therefore falls within the exception in § 491.060(2) to the general rule permitting the testimony of child victims. It has been held that:

The test of § 491.060 renders a person of unsound mind[2] incompetent to testify. The effect of the statute is to create the prima facie presumption that a person confined to a mental institution under

lawful process or adjudicated as mentally ill is absolutely incompetent as a witness. The presumption may be overcome, however, by extrinsic evidence that the witness understands the obligation of the oath, has sufficient mind and memory to notice, recollect and communicate the events. The burden to rebut the presumption of incompetency of one confined or adjudicated mentally ill by process of law rests on the party who offers the witness.

*State v. Dighera*, 617 S.W.2d 524, 526 (Mo. App.1981) (citations omitted). In *State v. Darty*, 619 S.W.2d 750 (Mo.App.1981), we noted:

Treatment at a mental hospital in the past and monthly outpatient treatment does not establish an unsound mind. *Because the witness had not been adjudicated of unsound mind and was not presently confined to a mental institution she is presumed competent.*

*Id.* at 751 (emphasis ours). In *State v. Stufflebean*, 604 S.W.2d 737 (Mo.App. 1980), it was stated that:

Absent prior adjudication of the witness as insane or a record of confinement in a mental institution, the burden of showing the witness to be of unsound mind *and* incompetent to testify is upon the one who seeks to exclude the witness's testimony on that ground.

*Id.* at 741 (emphasis ours). It has also been held that "in appropriate circumstances testimony may be accepted from a person even after that person has been adjudicated incompetent." *Sivils v. Sivils*, 659 S.W.2d 525, 527 (Mo.App.1983). Thus it is apparent from cases interpreting § 491.060(1) that a prior adjudication of mental incompetence or a record of confinement in a mental hospital is not conclusive; a witness must exhibit some mental infirmity

---

1. The traditional criteria, reflected in § 491.060(2), are:
   (1) a present understanding of the obligation to speak the truth, (2) mental capacity at the time of the event to observe and register the occurrence, (3) memory sufficient to retain independent recollection, and (4) capacity to relate the occurrences.

*C.R.K. v. H.J.K.*, 672 S.W.2d 696, 699 (Mo.App. 1984).

2. Section 491.060(1) previously referred to persons of "unsound mind"; in 1983 the language was changed to "mentally incapacitated."

*and* fail to meet the traditional criteria for witness competence.[3]

■ We are confronted here with a situation that is, in effect, the converse of that just referred to. Although there was conflicting evidence on the issue, it appears that the court could have found that R.R. did not meet the *general* criteria for competence of children under the age of ten as set out in § 491.060(2). However, there was no evidence she suffered from any mental infirmity. The only intelligence tests conducted indicated that R.R. is of "at least" average intelligence, and defendant's expert agreed that R.R. is not retarded. Nor was there any evidence that R.R. is mentally ill. In short, the evidence established that R.R. is a normal four and a half year old girl. Therefore, it cannot be said that R.R. is "mentally incapacitated" within the meaning of § 491.060(1).

The fallacy of defendant's argument is that he equates incompetence under the general criteria of § 491.060(2) with mental incapacity under § 491.060(1). As previously discussed, the terms are not synonymous. Furthermore, defendant's reading of § 491.060(1) would allow the mental incapacity exception in § 491.060(2) to swallow the rule permitting certain child victims to testify regardless of whether they are competent under the general criteria. We believe that some showing of mental infirmity or abnormality must be made before a witness may be excluded as mentally incapacitated.

No such showing was made in this case. While we are well aware that the trial court has discretion in determining whether a witness is mentally incapacitated under § 491.060(1),[4] the order in this case amounted to an abuse of that discretion. The order suppressing the testimony of R.R. is reversed and the case is remanded for further proceedings.

SMITH, P.J., and DOWD, J., concur.

---

3. The state's argument that § 491.060(1) applies *only* to persons who have been previously *adjudicated* mentally incapacitated is obviously incorrect. We also note that children are rarely, if ever, the subject of legal proceedings to determine their mental capacity.

4. *See, McCrary v. Ogden,* 267 S.W.2d 670, 672 (Mo.1954); *Dighera,* 617 S.W.2d at 526. As noted previously, the amendment to § 491.060(2) has eliminated "the need for a judicial determination" of the competency of certain child victims; therefore, there is no longer any opportunity for trial judges to "exercise discretion" and declare those child victims incompetent to testify under that subsection. *See, Williams,* 729 S.W.2d at 199.