**Gene L. CLARK, Appellant,**

v.

**Stephen C. REEVES, Respondent.**

**No. WD 46577.**

Missouri Court of Appeals,
Western District.

May 18, 1993.

Joe D. Holt, Holt, Mays & Brady, Fulton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth A. Malench, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

ULRICH, Judge.

Gene L. Clark appeals the judgment of the trial court affirming the order of the Personnel Advisory Board (PAB) which approved the actions of Steven C. Reeves, Superintendent, Fulton State Hospital, ("Respondent") and sustained Mr. Clark's dismissal from employment at the Fulton State Hospital. Mr. Clark contends on appeal that the trial court erred in affirming the PAB's decision because the PAB's decision was not supported by competent and substantial evidence based upon the record as a whole and was, in fact, arbitrary, capricious, unreasonable, and an abuse of discretion. Although Mr. Clark raises three points on appeal, Mr. Clark's argument is essentially that (I) the testimony of Fulton State Hospital patient, C.W., should not have been allowed, and (II) the decision of the PAB is against the overwhelming weight of the evidence. The decision of the Personnel Advisory Board is affirmed.

Mr. Clark was an employee of the State of Missouri's Department of Mental Health, Division of Comprehensive Psychiatric Services, on December 26, 1990. Mr. Clark worked as a Security Aide I at Fulton State Hospital and was assigned to the evening shift (3:00 p.m. to 11:00 p.m.) in Biggs Forensic Unit. C.W. was a psychiatric patient in Mr. Clark's assigned unit who had been placed in seclusion under wrist restraints on December 26, 1990. Members of the evening shift believed that institutional policy required that secluded patients, for their protection, not wear trousers. Shortly after Mr. Clark began his work shift on December 26, 1990, he and several other hospital staff members attempted to further restrain C.W. in order

to remove his trousers. During the process, Mr. Clark allegedly abused C.W. by kicking him.

Effective March 15, 1991, at the end of the evening shift, Respondent dismissed Mr. Clark from employment with Fulton State Hospital for physically abusing C.W. Thereafter, Mr. Clark appealed his dismissal to the PAB, and a hearing was conducted on May 30, 1991. In affirming Mr. Clark's dismissal, the PAB found that Respondent had "established by competent and substantial evidence, by the evidence as a whole, and by a preponderance thereof, that [Mr. Clark] kicked a patient on December 26, 1990, while subduing him to remove his clothes," and that "[t]he testimony and evidence to the contrary offered by [Mr. Clark] and witnesses for [Mr. Clark] was [sic] not credible." The PAB concluded that the actions of Respondent should be approved and sustained Mr. Clark's dismissal. The Circuit Court of Callaway County sustained the decision of the PAB on June 3, 1992. Mr. Clark appeals the judgment of the trial court.

## I.

■ Mr. Clark contends that the trial court erred in sustaining the PAB's decision because "the [PAB's] decision was an abuse of discretion in that the evidence of [C.W.] should have been disregarded as unreliable and incompetent." Mr. Clark directs this court's attention to the testimony of Dr. Mo Duong and Nina Davis before the administrative hearing officer. Dr. Duong, C.W.'s treating physician while C.W. was in Biggs 5, testified that C.W. suffered from "schizophrenic disorder, hypomanic, hiding alcohol abuse," as well as "manic paranoia" and that C.W. had been institutionalized for at least twenty years. Dr. Duong also testified that he was unsure if C.W. understood the obligation to speak truthfully or if C.W. knew the difference between right and wrong. Ms. Davis was the Director of Forensic Nursing for C.W.'s unit. When asked whether C.W. was believable, Ms. Davis replied, "It's very hard to say. I think there are occasions he tells the truth, but I think there

are a lot of occasions you can't believe anything he says."

Mr. Clark argues that the testimony of C.W. at the hearing was further indication of C.W.'s incompetency and of his inability to testify truthfully about events. While testifying about the December 26, 1990, incident, C.W. indicated at first that he had been injured in his side, but later stated that Mr. Clark had kicked him in the jaw. C.W. also reported that Mr. Clark and other Fulton State Hospital security aides had "pa[id him] off to jump on other patients" in the past by bringing him marijuana and alcohol.

■ A person confined to a mental institution under lawful process or adjudicated as mentally ill is generally presumed to be incompetent as a witness. § 491.-060(1), RSMo Supp.1992; *State v. Beine*, 730 S.W.2d 304, 307 (Mo.App.1987); *State v. Dighera*, 617 S.W.2d 524, 526 (Mo.App. 1981). This presumption may be overcome, however, by extrinsic evidence that the witness both (1) understands the obligation of the oath, and (2) has sufficient mind and memory to notice, recollect, and communicate the events. *Beine*, 730 S.W.2d at 307; *Dighera*, 617 S.W.2d at 526. The burden to rebut the presumption rests on the party who offers the witness. *Beine*, 730 S.W.2d at 307; *Dighera*, 617 S.W.2d at 526. The determination of a witness's competency to testify is for the trial court, whose decision will not be disturbed absent an abuse of discretion, *State v. Johnson*, 714 S.W.2d 752, 758–59 (Mo.App.1986), while the credibility of the witness's testimony is for the fact finder to determine. *Sivils v. Sivils*, 659 S.W.2d 525, 528 (Mo.App.1983). When the question of the competency of a witness is raised in an administrative proceeding, however, the determination of both the competency and the credibility of witnesses must be made by the administrative tribunal because it is acting as fact finder and as a quasi-judicial body.

Although Dr. Duong initially stated that he was unsure if C.W. understood the obligation to speak truthfully or if C.W. knew the difference between right and wrong, upon further questioning, Dr. Duong indi-

cated that C.W.'s real problem was his exercise in judgment, not his ability to distinguish between right and wrong:

ATTORNEY FOR RESPONDENT: Okay. So he may know the difference [between right and wrong], but his judgment is at question—

DR. DUONG: Right.

ATTORNEY FOR RESPONDENT: —as opposed to his ability to know the difference?

DR. DUONG: Right.

Dr. Duong also opined that C.W. had the mental capacity to observe an event in December of 1990, had the ability to retain an independent recollection of the event, could read and write, and was verbally communicative.

Much of C.W.'s testimony was corroborated by Mr. Clark and witnesses testifying in Mr. Clark's behalf. C.W.'s statements that the incident occurred on December 26, 1990, around the time of the work shift change, that C.W. was then in seclusion wearing wrist restraints, and that hospital staff members Jerry Stefferman, Jim Epperson, Kenny Morris, and Howard Maddox, as well as Mr. Clark, were present in the room at the time of the incident were all verified by Mr. Clark and/or Mr. Clark's witnesses Mr. Stefferman, Mr. Morris, and Mr. Maddox.[1] C.W. stated that Mr. Clark and Mr. Stefferman took him out of bed and placed him up against the wall in order to take his pants off. Mr. Morris confirmed these occurrences. C.W. remembered being examined by a physician after the incident, which Mr. Clark verified. C.W. also stated that he reported the incident. Ms. Davis, who was called by Mr. Clark, testified that C.W. had filed a patient abuse report. Both C.W. and Mr. Clark mentioned a discussion they had December 25, 1990, the day before the incident in question, which also involved the removal of C.W.'s trousers.

The only assertion made by C.W. concerning the incident which was not corroborated by Mr. Clark or one of his witnesses was C.W.'s claim that Mr. Clark kicked him while Mr. Clark was trying to remove C.W.'s pants. This statement was not unsubstantiated, however, for Mr. Epperson also testified that Mr. Clark "kicked [C.W.] a couple times," "around the midsection," while trying to restrain him.

Based upon Dr. Duong's testimony that C.W. understood the difference between right and wrong and had the mental capacity to observe, remember, and communicate events and the corroborating testimony of other witnesses, the PAB did not abuse its discretion in accepting the testimony of C.W. Point one is denied.

## II.

■ Mr. Clark also contends on appeal that the trial court erred in affirming the decision of the PAB because the PAB's decision was against the overwhelming weight of the evidence. Mr. Clark claims that "[a]ll but one competent witness testified contrary to the [PAB's] finding. The parties stipulated that no injury was found and no complaint was made." Therefore, Mr. Clark asserts "[i]t is ... impossible to conclude that the decision is based upon substantial evidence, based upon a review of the whole record, as the overall preponderance of evidence is to the contrary."

■ On appeal from the trial court's review of an administrative agency's decision, this court reviews the decision of the administrative agency, not the judgment of the trial court. *Cain v. State Bd. of Podiatry*, 834 S.W.2d 260, 261 (Mo.App.1992); *Americare Systems, Inc. v. Missouri Dep't of Social Servs.*, 808 S.W.2d 417, 419 (Mo. App.1991). The court on appeal may reverse the decision of the agency only where no substantial and competent evidence exists to support it, where the agency has abused its discretion, or where the agency has acted arbitrarily, capriciously, or unreasonably. *Americare Systems*, 808 S.W.2d at 419; § 536.140.2(3), (6), (7). Accordingly, the reviewing court views the record in the light most favorable to the administrative decision and disregards evidence that might support findings different from those of the agency. *Woodburn v.*

---

1. Mr. Epperson, who was called to testify by Respondent, also verified these statements.

*May Distributing Co.*, 815 S.W.2d 477, 482 (Mo.App.1991). If the evidence supports either of two contrary conclusions, the reviewing court is bound by the agency's findings. *Americare Systems*, 808 S.W.2d at 420.

Mr. Clark correctly notes that the parties stipulated that no injury to C.W. was found and no complaint of injury was made by C.W. immediately following the incident. The fact that no injury was found or immediately complained of, though, is not conclusive proof that Mr. Clark did not commit the action he was charged with—kicking C.W. Mr. Clark also is correct in his assertion that Mr. Epperson was the only witness to corroborate C.W.'s claim that Mr. Clark kicked him. However, "[i]f accepted as true by the trier of fact, the testimony of a single witness is sufficient to establish any fact." *Garren v. Smith*, 803 S.W.2d 184, 187 (Mo.App.1991). A greater number of witnesses alone affords no guarantee of the truth of their testimony. *Heibel v. Heibel*, 366 S.W.2d 37, 41 (Mo.App.1963).

The PAB specifically found that the testimony and evidence presented by Mr. Clark and witnesses for Mr. Clark were not credible. Mr. Clark called five witnesses in addition to testifying. One witness was accused of having used excessive force with C.W. during the incident by slamming him against a wall. The witness was suspended for his conduct and was required to attend a class to address his demonstrated excessive aggressiveness. This witness testified that C.W. "came off the bed like he wanted to fight." Another witness testified that C.W. lunged off of the bed, and three other witnesses testified that the first witness jerked C.W. from the bed. Another of the witnesses testified that he entered the room where the incident occurred only after C.W. was on the floor, his trousers had been removed, and leg restraints were being applied. Another witness did not remember Mr. Clark being in the room when C.W.'s trousers were removed.

■ In reviewing an administrative body's decision, this court must give due weight to the agency's opportunity to ob-serve the witnesses. *Fleming Foods of Missouri, Inc. v. Runyan*, 634 S.W.2d 183, 185 (Mo. banc 1982). Even assuming that the evidence presented by Mr. Clark permits a finding that he did not kick C.W., when the record is viewed in the light most favorable to the verdict, the evidence supports the agency's decision. Thus, this court is bound by the agency's finding of abuse. *Americare Systems*, 808 S.W.2d at 420. Point two is denied.

The decision of the Personnel Advisory Board is affirmed.

All concur.